**INDIANA FAMILY & SOCIAL SER-VICES ADMINISTRATION, Ap-pellant–Plaintiff,**

v.

**Cordelia RADIGAN d/b/a, Little Bears Day Care, Appellee–Defendant.**

No. 21A04–0102–CV–62.

Court of Appeals of Indiana.

July 24, 2001.

Publication Ordered Aug. 30, 2001.

Steve Carter, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Andrew E. Clark, Dawn E. Wellman, Allen Wellman McNew, Greenfield, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Indiana Family & Social Services Administration ("IFSSA") sought to enjoin Cordella Radigan d/b/a Little Bears Day Care ("Radigan") from operating a child care home without a license. The trial court granted summary judgment in favor of Radigan, from which order IFSSA appeals. We reverse.

### Issue

IFSSA presents for review the sole issue of whether summary judgment was properly granted.

### Facts and Procedural History

The relevant facts are not in dispute. Radigan held a license to operate a child care home at her Connersville, Indiana

residence until February 3, 1999, when IFSSA notified Radigan of the revocation of her license. Subsequently, Radigan entered into an agreement with IFSSA whereby she agreed to forgo seeking a child care license in the future. Thereafter, Radigan, d/b/a Little Bears, provided services to children including day care and preschool instruction.

Five children are enrolled in the day care program, with three children attending all day and two children attending from noon until 4:30 p.m. Twelve children attend a preschool session from 8:00 a.m. to noon. Nine children attend a preschool session from 1:00 p.m. to 5:00 p.m.

On July 10, 2000, IFSSA filed a complaint seeking to permanently enjoin Radigan from operating a child care home without a license in violation of Indiana Code section 12–17.2–5–1 *et. Seq.* The complaint also sought the imposition of a fine of $100.00 per day of operation. On October 4, 2000, Radigan moved for summary judgment in her favor, contending that she was operating a preschool rather than a child care home as defined in Indiana Code section 12–7–2–28.6 and was exempt from licensure requirements. On October 11, 2000, IFSSA filed a cross-motion for summary judgment on its claim for injunctive relief and fines. A hearing was held on October 31, 2000. On December 4, 2000, the trial court granted summary judgment to Radigan. IFSSA now appeals.

**Discussion and Decision**

*A. Standard of Review*

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Paint Shuttle, Inc. v. Continental Cas. Co.,* 733 N.E.2d 513, 518 (Ind.Ct.App.2000), *trans. denied.* When reviewing the grant or denial of summary judgment, we employ the same standard used by the trial court. *Crossno v. State,* 726 N.E.2d 375, 378 (Ind. Ct.App.2000). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). A genuine issue of material fact exists when facts concerning an issue that would dispose of the litigation are in dispute or when the undisputed facts are able to support conflicting inferences on such an issue. *Miles v. Christensen,* 724 N.E.2d 643, 645 (Ind.Ct. App.2000), *trans. denied.*

A trial court's grant of summary judgment is clothed with a presumption of validity on appeal, and the appellant bears the burden of demonstrating that the trial court erred. *Crossno,* 726 N.E.2d at 378. Nevertheless, if the record discloses an incorrect application of the law to the facts, we must reverse a grant of summary judgment. *In Re Estate of Weitzman,* 724 N.E.2d 1120, 1122 (Ind.Ct.App.2000).

 The instant case involves a question of statutory interpretation. The interpretation of a statute is a question of law reserved for the courts. *Wayne Metal Products Co., Inc. v. Indiana Dept. of Environmental Management,* 721 N.E.2d 316, 317 (Ind.Ct.App.1999), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.*[1]

---

1. We acknowledge, however, as addressed in the concurring opinion, that this Court will "give great weight" to an administrative

agency's reasonable interpretation of a statute (1) when the interpreting agency is charged with the duty of enforcing the statute inter-

## B. Analysis

IFSSA claims that Radigan is operating a child care home without a license, in violation of Indiana Code section 12–17.2–5–1. Conversely, Radigan claims she is not operating a child care home as defined in Indiana Code section 12–7–2–28.6, because she provides full-time child care to fewer than six children and the majority of the children in her care are enrolled in a preschool program for which a license is not required. She directs us to the definition of preschool found in Indiana Code section 12–7–2–143.5:

"Preschool," for purposes of IC 12–17.2, means a program that provides an educational experience through an age appropriate written curriculum for children at least thirty (30) months of age who are not eligible to enter kindergarten and that:

(1) conducts sessions for not more than four (4) hours a day;

(2) enrolls children for only one (1) session a day;

(3) does not serve meals on the premises;

(4) maintains a child to staff ratio of not more than fifteen (15) children to one (1) staff member;

(5) supervises children at all times with a person who is at least eighteen (18) years of age; and

(6) does not operate for more than ten (10) consecutive days.

Radigan claims that she offers services precisely meeting the foregoing criteria. Nevertheless, the definitional statute setting forth the characteristics of a preschool does not provide an exemption from licensure requirements for the program de-

---

preted and (2) the interpretation is not inconsistent with the statute itself. *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000). In *LTV,* the Safety Board adjudicated a safety inspector to have had a financial interest as defined by a provision of the Ethics Code [IND CODE § 4–2–6–1(9) (1990) ], a matter within the exclusive jurisdiction of the Ethics Commission. *Id.* at 1258. The Indiana Supreme Court specifically disapproved the scenario where different agencies as well as the Court of Appeals "tried their respective hands" at interpreting the meaning of a "financial interest" in the Ethics Code, with varying results. *Id.* at 1259. To avoid inconsistency and difficulty of compliance, a reviewing court will not give equal weight to competing agency interpretations, such as were involved in the *LTV* decision. A court's findings of "dual reasonableness" when presented with competing interpretations undermines the general policy of acknowledging the expertise of the agency empowered to interpret and enforce a statute. *Indiana Wholesale Wine & Liquor Co. v. State,* 695 N.E.2d 99, 105 (Ind.1998).

We acknowledge the general rule that we defer to the agency with the expertise in the particular area of law when necessary. Nev-

ertheless, deference is not equivalent to an abdication of our Constitutional power of review. To determine if the agency has made a reasonable interpretation under the facts and circumstances present, it is necessary to resort to traditional statutory principles. *See Sullivan v. Day,* 681 N.E.2d 713, 716 (Ind. 1997) (adopting by reference that portion of the opinion of the Court of Appeals, 661 N.E.2d 848, 852–54 (Ind.Ct.App.1996), wherein the Court of Appeals employed traditional principles of statutory construction and ultimately determined that the FSSA interpretation was entitled to deference). Otherwise, the evaluative process could regress to an arbitrary determination of the statutory meaning without the use of our well-honed tools of statutory interpretation. We do not conclude, as Judge Baker suggests, that *LTV* is a pivotal point in the development of our role in statutory interpretation. Rather, *LTV* incorporates an alternative statement of a well-settled standard; specifically, we will defer to agency expertise as to the meaning and application of statutes within that agency's purview. We will accord that interpretation great weight, but must nevertheless determine whether the agency interpretation is reasonable and do so by resort to traditional principles of statutory construction.

scribed.[2] The statute specifies the length of a preschool session, but does not exclude the possibility of a facility that offers preschool for a portion of the day and child care services before, during or after the preschool session. Accordingly, it is not dispositive. If Radigan is operating a child care home, regardless of whether she also offers preschool instruction, she is required to obtain a license pursuant to Indiana Code section 12–17.2–5–1 which provides in pertinent part:

A person may not operate a child care home without a license issued under this article.

Central to this case is the meaning of "child care home," defined in Indiana Code section 12–7–2–28.6 as:

a residential structure in which at least six (6) children (not including the children for whom the provider is a parent, stepparent, guardian, custodian, or other relative) at any time receive child care from a provider:

(1) while unattended by a parent, legal guardian, or custodian;

(2) for regular compensation; and

(3) for more than four (4) hours but less than twenty-four (24) hours in each of ten (10) consecutive days per year, excluding intervening Saturdays, Sundays, and holidays.

IFSSA and Radigan disagree as to whether the foregoing statute necessarily contemplates care of the same six or more children for more than four hours. IFSSA argues that the statute applies when at least six children collectively receive child care in Radigan's home for more than four hours daily while Radigan argues that it would apply only if at least six individual children each received more than four hours of child care in her home daily.

Our initial inquiry is whether the statute is clear and unambiguous on its face. *In re Souder's Estate*, 421 N.E.2d 12 (Ind.Ct.App.1981). Construction is warranted only where a statute is susceptible to more than one interpretation. *Id.* Here, the statute may be interpreted as referring to children receiving child care services either individually or collectively. In these circumstances, we must ascertain the legislative intent and interpret the statute so as to effectuate that intent. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001).

Words and phrases in a single section are construed together with the other parts of the same section and with the statute as a whole, in order that the spirit and purpose of the statute is carried out. *Souder*, 421 N.E.2d at 13 (citing *Indiana State Highway Comm'n v. White*, 259 Ind. 690, 695, 291 N.E.2d 550, 553 (1973)). Moreover, we view the statute within the context of the entire act rather than in isolation. *One 1968 Buick, 4 Door v. State*, 638 N.E.2d 1313, 1317 (Ind.Ct. App.1994). Finally, where a statute is reasonably susceptible to more than one interpretation, we must consider the consequences of a particular construction. *Id.* at 1318.

The clear objective of the Day Care Regulation Act, Indiana Code section 12–17.2–2–1 *et seq.*, is the protection of children. In furtherance of this objective, the legislature prohibits the supervision of children beyond a specified number for extended periods of time absent the child care provider meeting licensure requirements. IND. CODE §§ 12–7–2–28.6; 12–17.2–5–1(a).[3] Moreover, Indiana Code section 12–17.2–2–8(3) and (8) prohibits opera-

---

**2.** The Day Care Regulation Act does not include a preschool exemption statute as a corollary to this definitional statute, aptly described by IFSSA as "an orphan."

**3.** As a corollary, Indiana Code section 12–17.2–2–8 exempts from licensure require-

tion of a child care home if "the number of children maintained on the premises at any one time is greater than the number authorized by the license."

 Radigan supervises children from 8:00 a.m. or earlier until 5:00 p.m. or later. During the morning hours, fifteen children are present in her home. During the afternoon hours, fourteen children are present in her home. These facts present the very situation—the extended provision of child care supervision to many children—that was contemplated by the legislature when they enacted the Day Care Regulation Act. Were this Court to interpret Indiana Code section 12–7–2–28.6 in accordance with Radigan's construction, child care providers unwilling or unable to meet State licensure requirements could, as a consequence, persistently rotate children in and out of an unlicensed home every four hours to avoid triggering the license requirement. The shortcomings of the unlicensed facility notwithstanding, IFSSA would then possess no recourse so long as no child in the facility was in the facility for more than four hours each day.[4] This result would be both illogical in light of the legislative objective of protecting children and contrary to the reasonable interpretation advanced by IFSSA.

Therefore, we construe Indiana Code section 12–7–2–28.6, consistent with IFSSA's interpretation, to include within the definition of "child care home" a facility operating for the requisite time periods in which the total number of children maintained on the premises at any one time is six or greater.

### Conclusion

In light of the foregoing, the trial court erroneously granted summary judgment to Radigan. We reverse the grant of summary judgment and remand for further proceedings on the complaint of IFSSA for injunctive relief and the imposition of fines.

Reversed and remanded.

BAKER, J., concurs in result with separate opinion.

MATHIAS, J., concurs.

BAKER, Judge, concurring in result.

I agree that the FSSA's interpretation of IND. CODE § 12–7–2–28.6—defining a child care home—controls the outcome of this case. For two reasons: 1) the FSSA[1] is empowered to enforce the statute; and 2) its interpretation of the statute is reasonable.

---

ments the following programs: A nonresidential program for a child that provides child care for less than four (4) hours a day; and A child care home if the provider: (C) cares for less than six (6) children, not including children for whom the provider is a parent, stepparent, guardian, custodian, or other relative.

4. We recognize that Indiana Code section 12–17.2–2–8 provides an exemption where the provider cares for children who are related to the provider. Moreover, Indiana Code section 12–7–2–28.6 excludes from the licensure threshold children for whom child care is provided without compensation. However, these exceptions are not applicable here.

1. The "Indiana Family and Social Services Administration, Division of Family and Chil-

dren" originally appeared as the plaintiff in this suit, R. at 5, but the Notice of Appeal lists the "Indiana FSSA" as the party appealing the summary judgment. I.C. § 12–17.2–2–1(1) specifically grants the Division of Family and Children (DFC) the responsibility of licensing and monitoring child care homes. See IND. CODE § 12–7–2–69(a)(2)(F) (specifying that the general term "division" used in I.C. § 12–17.2–2–1(1) means the DFC). Regardless, the FSSA can be said to be the administrative agency with ultimate responsibility for enforcing the statute. First, the FSSA is the umbrella agency for the DFC and the two other main social service divisions. See IND. CODE § 12–8–1–5(3) (giving the FSSA the responsibility of providing technical

"An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless the interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000). When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, it should defer to the agency. *Sullivan v. Day,* 681 N.E.2d 713, 716 (Ind.1997) (holding that the trial court erred in not deferring to the FSSA's "plausible" interpretation of a statute since the FSSA was "charged with interpreting" that particular statute). So, as a matter of appellate adjudication, when a court determines that an administrative agency's interpretation is reasonable, it should "terminate[ ] its analysis" and not address the reasonableness of the other party's interpretation. *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 105 (Ind.1998) (holding that the Indiana Alcoholic Beverage Commission's interpretation was reasonable, so that the analysis of the other parties' interpretation was unnecessary).[2]

A court is to continue to apply traditional principles of statutory construction in deciding whether an agency's interpretation is reasonable. *See id.* (examining both the text of the statute and statutory history in determining whether the agency's interpretation was reasonable). But after applying such principles and determining that an agency's interpretation is reasonable, a court should "terminate[ ] its

analysis." *Id.* Here, the majority seems to weigh the two contrary interpretations even after acknowledging that the FSSA's interpretation was reasonable. *See* op. at 622 ("Finally, where a statute is reasonably susceptible to more than one interpretation, we must consider the consequences of a particular construction."). The majority should have "terminated its analysis" when it concluded that the FSSA's interpretation was reasonable. Such deference, as commanded by our supreme court, "acknowledg[es] the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations." *Ind. Wholesale,* 695 N.E.2d at 105.

---

assistance for the management and administrative performance of each division). Second, a recent opinion of this court used the words "division" and "IFFSA" interchangeably with respect to the licensing of child care homes. *See Ind. Family and Soc. Servs. Admin. v. Jones,* 691 N.E.2d 1354, 1355 (Ind.Ct. App.1998).

**2.** In *Indiana Wholesale Wine & Liquor Co. v. State,* those challenging the Commission's interpretation were non-agency parties: National Wine and Spirits Corporation and Olinger Distributing Company, Inc. 695 N.E.2d at 101.