Brent M. GOFFINET, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 62A01–0202–CR–65.

Court of Appeals of Indiana.

Oct. 8, 2002.

Lorinda Meier Youngcourt, Huron, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, for Appellee.

1. Ind.Code § 35–48–4–2(a)(1)(A).

2. Ind.Code § 35–48–4–14.5(c)(2).

## OPINIION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Brent M. Goffinet ("Goffinet") appeals his convictions for Class B felony dealing in a controlled substance ("manufacturing methamphetamine"),[1] Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance ("possession of precursors"),[2] and Class B felony possession of marijuana.[3] We affirm in part, vacate in part, and remand with instructions.

### Issues

Goffinet raises four issues for our review, which we consolidate and restate as follows:

I. whether there is sufficient evidence to support his convictions;

II. whether his convictions for possession of precursors and manufacturing methamphetamine violate the double jeopardy clause of the Indiana Constitution; and

III. whether the trial court abused its discretion when it imposed and subtracted from Goffinet's bond remittance various costs and fees.

### Facts and Procedural History

On February 29, 2000, while on routine patrol, Tell City Police Officer Lynn Wooldridge ("Wooldridge") noticed a strong chemical odor near Goffinet's residence, in which he lived with his girlfriend, Amy Howland ("Howland"). Officer Wooldridge called Indiana State Police Trooper Jon Deer to assist in his investigation of the odor. As they drove past Goffinet's residence with the windows of their car open, both officers smelled the odor. The officers identified the odor as that of ether,

3. Ind.Code § 35–48–4–11(1).

a chemical they associated with the production of methamphetamine. The officers approached the back door of Goffinet's residence and noticed that the ether odor was strongest there. Nobody answered when the officers knocked on the door. The officers also observed two propane tanks that appeared to have been modified to dispense anhydrous ammonia behind a storage shed on Goffinet's property. Using flashlights, they observed what they believed was a hydrogen chloride ("HCl") generator in a van licensed to Goffinet. The officers called for backup to secure the scene while they obtained a search warrant for the property.

After the officers returned with a search warrant, Indiana State Police forensic scientist Michael Maye ("Maye") arrived at Goffinet's property to assist in the investigation. Maye found evidence of methamphetamine manufacture, including a two-gallon jar containing pseudoephedrine pills soaking in denatured alcohol in the van; two propane tanks modified to dispense anhydrous ammonia behind Goffinet's shed; several cans of starter fluid containing ether in the shed, the van, and Goffinet's Pontiac Firebird; and an HCl generator and "liquid fire", a drain cleaner containing sulfuric acid, in the van. In the basement of Goffinet's house, Maye also found medications containing pseudoephedrine and medications containing phenylpropanolamine. Maye found methamphetamine in coffee filters in a kitchen cabinet and 47.68 grams of marijuana in two bags in the kitchen freezer.

On March 10, 2000, the State charged Goffinet with manufacturing methamphetamine, possession of a controlled substance,[4] possession of precursors, and possession of marijuana. That same day, the trial court issued a warrant for Goffinet's arrest and set his bond at $50,000.00. On June 16, 2000, Goffinet filed a motion to suppress the evidence the police obtained in their search of his property, which the trial court denied in an order dated June 20, 2000. On July 12, 2000, Goffinet filed a petition to certify the trial court's order for interlocutory appeal, which the trial court granted on August 30, 2000. In a memorandum decision, this court affirmed the trial court's denial of Goffinet's motion to suppress. *See Goffinet v. State,* No. 62A04-0011-CR-493, 743 N.E.2d 1292 (Ind.Ct.App. Mar.16, 2001).

Also on July 12, 2000, Goffinet moved to reduce his bond to $20,000.00. The trial court granted the motion on that day, and Goffinet's father paid the entire amount of the bond in cash. After a trial held on November 19 and 20, 2001, a jury found Goffinet guilty as charged. On December 12, 2001, at Goffinet's sentencing hearing, the trial court vacated Goffinet's conviction for possession of a controlled substance as a lesser-included offense of manufacturing methamphetamine and ordered him to pay court costs of $129.00 and a drug fee of $2000.00. Based on its review of the presentence investigation report, the trial court found Goffinet indigent and appointed counsel to prosecute Goffinet's appeal.

On January 11, 2002, Goffinet filed a petition to proceed on appeal in forma pauperis. On January 14, 2002, the trial court granted Goffinet's petition, with the following proviso:

> Pursuant to this Court's Order[5] which was in effect on the date defendant post-

---

4. Ind.Code § 35-48-4-7(a).

5. The order to which trial court referred is apparently a standing order issued by Judge David E. Evrard of the Perry Circuit Court, dated June 3, 1999. Upon paying the bond,

Goffinet's father and Goffinet signed a notarized copy of the order, which reads in relevant part as follows:

> ALL cash bonds posted are subject to the following conditions:

**1230**

ed the cash bond, the Court will grant Defendant's Verified Petition insofar as the Court will direct that the costs and fees for the preparation of the pleadings and transcript of this cause shall be paid from the Defendant's cash bond.

Appellant's App. at 113–14. On January 24, 2002, Goffinet moved for remittance of the cash bond paid by his father. In an order dated February 12, 2002, the trial court remitted the $20,000.00 bond to Goffinet but ordered the clerk to retain therefrom $3500.00 for appeal costs, $50.00 for an administrative fee, $129.00 for court costs, and the $2000.00 drug fee. Goffinet now appeals.

### Discussion and Decision
### *I. Sufficiency of the Evidence*

Goffinet contends that the State presented insufficient evidence to support his convictions. Specifically, Goffinet argues only that the State presented insufficient evidence to establish that he possessed the evidence found on his property. "A conviction for possession of contraband may rest upon proof of either actual or constructive possession." *Tardy v. State*, 728 N.E.2d 904, 908 (Ind.Ct.App.2000). "Actual possession occurs when a person has direct physical control over the item." *Id.* Because Goffinet did not have actual possession of any of the evidence when it was found on his property, the State was required to establish constructive possession.

To prove constructive possession, the State had to show that Goffinet "had both the capability and the intent to maintain dominion and control over the contraband." *Mitchell v. State*, 745 N.E.2d 775, 789 (Ind.2001). The capability to maintain dominion and control can be shown by "[p]roof of a possessory interest in the premises where the contraband was found[.]" *Id.* It is undisputed that Goffinet owned the property on which the evidence was found. To prove that Goffinet had the intent to maintain dominion and control, the State must demonstrate the defendant's knowledge of the presence of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband.

*Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999) (citations and quotation marks omitted).

These additional circumstances have been found to include (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. In each of the instances enumerated above there exists the probability that the presence and character of the contraband was noticed by the defendant.

*Ladd v. State*, 710 N.E.2d 188, 190 (Ind.Ct. App.1999) (citations omitted).

Because Goffinet shared his property with Howland, he did not have exclusive control over it; therefore, the State was required to present evidence of additional circumstances pointing to Goffinet's knowledge of the presence of the contraband.

---

1.  The bail shall be posted in the name of the defendant.
2.  The bail, when posted shall become a personal asset of the defendant.
3.  The cash posted for bail shall be held by the Clerk and shall be used to pay admin-

istrative fees, court costs, fines, probation user fees, restitution, pauper counsel fees, child support and all cost of appeal including, but not limited to attorney fees and transcript fees.

Appellant's App. at 51.

We address the evidence supporting each of Goffinet's convictions separately.

## A. Manufacturing Methamphetamine and Possession of Precursors [6]

■ With respect to these convictions, the record before us contains overwhelming evidence of the manufacture of methamphetamine on Goffinet's property and of precursors in plain view.[7] When asked if he had found "evidence of the ... process for manufacturing methamphetamine," Tr. at 297, Maye testified to finding, *inter alia,* pseudoephedrine tablets dissolving in denatured alcohol, *see id.* at 298; two propane tanks modified to dispense anhydrous ammonia, *see id.* at 304–05; several cans of starting fluid, *see id.* at 308; and an HCl generator, *see id.* at 311, all of which were in plain view. This evidence supports the inference that Goffinet had knowledge of the presence of the contraband on his property. The State presented sufficient evidence to support the inference that Goffinet constructively possessed items associated with methamphetamine manufacture and methamphetamine precursors.

## B. Marijuana Possession

■ To support the inference that Goffinet had constructive possession of the marijuana, the State had to produce evidence of additional circumstances indicating that Goffinet intended to exercise control and dominion over the marijuana. The marijuana was not in plain view but was found in two bags in the freezer.

Goffinet cites to *Edwards v. State,* 179 Ind.App. 363, 385 N.E.2d 496 (1979), in which this court concluded that the State produced insufficient evidence to support the inference that Edwards was aware of the amphetamines found in his apartment. *See id.* at 367, 385 N.E.2d at 498. Edwards did not have exclusive control over the apartment, which he shared with his brother and his brother's girlfriend. *See id.* at 364, 385 N.E.2d 496. The police found the amphetamines in the butter compartment of the refrigerator. *See id.*

The instant case is distinguishable from *Edwards,* however. In that case, the record indicated that many visitors had had access to the refrigerator during a party held two days before the amphetamines were found. *See id.* at 367, 385 N.E.2d at 498. Additionally, there was testimony that Edwards was exclusively a margarine user and that the margarine container would not fit into the butter compartment. *See id.* In the instant case, there is no indication that anyone other than Goffinet and Howland had access to the freezer

---

6. The physical evidence supporting these convictions is not contraband *per se,* which Black's Law Dictionary defines as "[p]roperty whose possession unlawful regardless of how it is used[,]" but derivative contraband, which Black's defines as "[p]roperty whose possession becomes unlawful when it is used in committing an illegal act." Black's Law Dictionary 318 (7th ed.1999).

7. We do not address Goffinet's contention that the State failed to prove that he had constructive possession of the methamphetamine found in his kitchen. To convict Goffinet of Class B felony manufacturing methamphetamine under Indiana Code Section 35–48–4–2(a)(1)(A), the State had to prove only that he (1) knowingly or intentionally (2) manufactured (3) methamphetamine, not that he possessed any. Indiana Code Section 35–48–1–18 defines "manufacture" as

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

The statute does not require possession of the finished product or even completion of the manufacturing process. *See Bush v. State,* 772 N.E.2d 1020, 1022–23 (Ind.Ct.App.2002).

where the marijuana was found, or that Goffinet never used the freezer.

The facts of the instant case are similar to those in *Carnes v. State*, 480 N.E.2d 581 (Ind.Ct.App.1985), *trans. denied*, in which the police found marijuana in a container in the refrigerator. *See id.* at 584. This court concluded that constructive possession of the marijuana could be inferred as to both residents of the house, reasoning

> that the nature of the place where the contraband is found may be such that it would defy logic and human experience, and force upon the courts an unwarranted naivete, to believe that adults with a possessory interest in the premises were unaware of the presence of the contraband. Contraband which, as in the instant case, is found within the residence without any indicia of exclusivity as between the joint occupants, fits within this rationale.

*Id.* at 587. Here, the marijuana was found in the freezer *without any indicia of exclusivity* as between Goffinet and Howland. The State produced sufficient evidence to support the inference that Goffinet constructively possessed the marijuana.

## II. Double Jeopardy

Goffinet contends that the jury relied upon the same actual evidence to establish the essential elements of both manufacturing methamphetamine and possession of precursors, thereby rendering both crimes the "same offense" in violation of the double jeopardy clause of the Indiana Constitution.[8]

In *Richardson v. State*, 717 N.E.2d 32, (Ind.1999), our supreme court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to . . . the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49–50. The *Richardson* court stated the actual evidence test as follows:

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53 Our supreme court recently explained that when applying the actual evidence test, the question

> is *not* merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

*Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

To commit Class B felony manufacturing methamphetamine, one must (1) knowingly or intentionally (2) manufacture (3) methamphetamine. *See* Ind.Code § 35–48–4–2(a)(1)(A). To commit Class D felony possession of precursors, one must (1) possess two or more chemical reagents or precursors[9] (2) with the intent to manufacture

---

8. Article I, Section 14 of the Indiana Constitution provides in relevant part that "[n]o person shall be put in jeopardy twice for the same offense."

9. The chemical reagents and precursors listed in Indiana Code Section 35–48–4–14.5(a) are (1) ephedrine; (2) pseudoephedrine; (3) phenylpropanolamine; (4) the salts, isomers, and salts of isomers of a substance identified in

methamphetamine. *See* Ind.Code § 35–48–4–14.5(c)(2).

The evidentiary facts establishing the essential elements of manufacturing methamphetamine do not establish all the essential elements of possession of precursors. The State presented ample evidence that Goffinet manufactured methamphetamine, but that evidence cannot support a conviction for possession of precursors without the additional evidence that he possessed at least two precursors. In fact, Maye found at least four precursors to methamphetamine manufacture that were not yet incorporated into the manufacturing process: pseudoephedrine, *see* Tr. at 319; starter fluid containing ether, *see id.* at 308; "liquid fire" containing sulfuric acid, *see id.* at 311; and phenylpropanolamine, *see id.* at 319. We conclude that there is no reasonable possibility that the jury relied on the same evidentiary facts to establish the essential elements of both manufacturing methamphetamine and possession of precursors. Goffinet's convictions for both crimes do not violate the Indiana double jeopardy clause.

### III. Costs and Fees

■ Goffinet contends that the trial court erred in retaining the following from his $20,000 cash bond: court costs of $129.00; an administrative fee of $50.00; a payment into the supplemental public defender fund intended to cover the costs of his appeal ("appeal costs") of $3500.00; and a drug abuse, prosecution, interdiction, and correction fee ("drug fee") of $2000.00. Indiana Code Section 35–33–8–3.2 governs bail and bail procedure and provides in relevant part as follows:

subdivisions (1) through (3); (5) anhydrous ammonia or ammonia solution; (6) organic solvents; (7) hydrochloric acid; (8) lithium metal; (9) sodium metal; (10) ether; (11) sulfuric acid; (12) red phosphorous; (13) iod-

(a) A court may admit a defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of ·the legal proceedings, or, upon a showing of clear and convincing evidence that the defendant poses a risk of physical danger to another person or the community, to assure the public's physical safety:

(1) Require the defendant to: ·

(A) execute a bail bond with sufficient solvent sureties;

(B) deposit cash or securities in an amount equal to the bail;

. . . .

(2) Require the defendant to execute a bail bond by depositing cash or securities with the clerk of the court in an amount not less than ten percent (10%) of the bail. If the defendant is convicted, the court may retain all or a part of the cash or securities to pay fines, costs, fees, and restitution, if ordered by the court. A portion of the deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee. The clerk shall also retain from the deposit under this subdivision the following:

(A) Fines, costs, fees, and restitution as ordered by the court.

(B) Publicly paid costs of representation that shall be disposed of in accordance with subsection (b).

Goffinet contends, and the State concedes, that Indiana Code Section 35–33–8–3.2 does not authorize the trial court to order any money retained from a bond remittance for any purpose unless the

ine; (14) sodium hydroxide; (15) potassium dichromate; (16) sodium dichromate; (17) potassium· permanganate; and (18) chromium trioxide.

bond was a 10% cash or securities deposit governed by Indiana Code Section 35–33–8–3.2(a)(2). We agree. Since Goffinet's father paid the entire amount of the bond in cash, the trial court abused its discretion in retaining from the bond remittance court costs of $129.00, an administrative fee of $50.00, appeal costs of $3500.00, and a drug fee of $2000.00. We therefore vacate the bond remittance order and remand with instructions to remit the entire bond to Goffinet.[10] We now determine whether the trial court, on remand, may otherwise impose the various fees and costs on Goffinet.

### A.  Court Costs

■ The trial court imposed court costs of $129.00 at Goffinet's sentencing and later retained this amount from the bond remittance. Generally, "[w]hen the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent." Ind.Code § 33–19–2–3(a). However, a hearing is not required when the trial court appoints pauper counsel and makes it clear to the defendant in its sentencing statement that he will not be imprisoned for failing to pay court costs. *See Wooden v. State,* 757 N.E.2d 212, 218 (Ind. Ct.App.2001) ("Therefore, because the trial court's statements and actions at the sentencing hearing indicate an intention to find Wooden indigent, and because the sentencing statement includes the required non-imprisonment language, we find no error in the imposition of costs and fees without a separate indigency hearing."), *trans. denied.* Relying on the presentence investigation report, the trial court appointed pauper counsel to prosecute Goffinet's appeal. *See* Tr. at 491. However, the trial court did not indicate, either at the sentencing hearing or in the sentenc-

ing portion of its written judgment, that Goffinet could not be imprisoned for failure to pay the court costs. On remand, we instruct the trial court either to hold an indigency hearing before imposing court costs on Goffinet or to amend its sentencing statement to include the required non-imprisonment language.

### B.  Administrative Fee

■ Indiana Code Section 35–33–8–3.2(a)(2) authorizes the imposition of an administrative fee only if the defendant posted a 10% cash bond. Because Goffinet's father paid the entire amount of the bond in cash, the trial court may not impose a $50.00 administrative fee on remand.

### C.  Appeal Costs

■ As we concluded above, the trial court erred in retaining Goffinet's appeal costs from his bond remittance. We further note that Indiana Appellate Rule 40(D) provides in relevant part that "[a] party proceeding in forma pauperis ... is relieved of the obligation to prepay filing fees or costs in either the trial court or the Court on Appeal or to give security therefor[.]" Thus, the trial court also erred in assessing prospective appeal costs against Goffinet after it found him to be a pauper. Nothing in Appellate Rule 40(D), however, proscribes retroactive assessment of appeal costs against a pauper, costs which should now be easily ascertainable. On remand, the trial court may determine and assess appeal costs against Goffinet.

### D.  Drug Fee

■ Indiana Code Section 33–19–6–9 governs drug fees and provides in part as follows: "In determining the amount of the

---

10.  As mentioned above, when Goffinet's father paid Goffinet's bond, both signed a standing order that provided in relevant part

that "[t]he bail, when posted shall become a personal asset of the defendant." Appellant's App. at 51.

drug abuse, prosecution, interdiction, and correction fee assessed against a person convicted of an offense under IC 35–48–4, a court shall consider the person's ability to pay the fee." During Goffinet's sentencing hearing, the trial court imposed the $2000.00 drug fee without indicating that it had considered his ability to pay the fee. *See* Tr. at 488. Although the trial court later determined that Goffinet was indigent and appointed a public defender to prosecute his direct appeal, *see id.* at 491, we cannot conclude, based on the record before us, that the trial court necessarily considered his ability to pay the drug fee. On remand, the trial court shall determine Goffinet's ability to pay before imposing any drug fee. *See Like v. State,* 760 N.E.2d 1188, 1193 (Ind.Ct.App.2002), *modified on reh'g on other grounds,* 766 N.E.2d 416 (Ind.Ct.App.2002).

■ We must now determine whether the trial court may impose a drug fee of greater than $1000.00 on remand. Indiana Code Section 33–19–6–9 further provides that "[t]he court shall assess a drug abuse, prosecution, interdiction, and correction fee of at least two hundred dollars ($200) and not more than one thousand dollars ($1,000) against a person convicted of an offense under IC 35–48–4." "We do not interpret a facially clear and unambiguous statute. Instead, we give the statute its plain and clear meaning and will not resort to other rules of statutory construction." *Melo v. State,* 744 N.E.2d 1035, 1037 (Ind. Ct.App.2001). In our view, Indiana Code Section 33–19–6–9 clearly allows a maximum drug fee of $1000.00 per person, regardless of the number of applicable offenses of which he is convicted in any one proceeding. Had the legislature intended to assess fees according to the number of offenses, it would have provided that a trial court may assess a "fee of not more than one thousand dollars *for each offense* under IC 35–48–4 of which a person is convicted." On remand, if the trial court

determines that Goffinet is able to pay a drug fee, it may not impose a total drug fee of more than $1000.00.

Affirmed in part, vacated in part, and remanded with instructions.

SHARPNACK, J., and FRIEDLANDER, J., concur.