Zettie COTTON, Appellant–Respondent,

v.

Edward ELLSWORTH, Appellee–Petitioner.

No. 48A04–0204–CV–185.

Court of Appeals of Indiana.

May 20, 2003.

Douglas R. Long, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Zettie Cotton[1] (the "Indiana Department of Correction" or the "DOC"), appeals the trial court's decision granting Edward Ellsworth's writ of habeas corpus, arguing that the trial court's interpretation of IC 35–50–6–3.3, the educational credit time statute, is erroneous because it ignores the statute's unambiguous language.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Ellsworth was convicted of robbery and sentenced to a thirty-year term of imprisonment in the DOC. During his incarceration, he was awarded an associate's degree and on April 6, 1998, the DOC therefore subtracted one year of educational credit time according to statute. The version of the statute then in effect required the credit time to be subtracted from an inmate's total sentence. Because inmates, like Ellsworth, in credit Class I earn one day of credit for each day they actually serve with good behavior,[2] the effect of the one-year credit from Ellsworth's total sentence was the advancement of his projected release date by six months.

---

1. Cotton is the superintendent of the Pendleton Correctional Facility where Edward Ellsworth was imprisoned.

2. IC 35–50–6–3 provides that a person assigned to Class I earns one day of credit time for each day he or she is imprisoned for a crime or confined awaiting trial or sentencing.

In 1999, the legislature amended the statute to require that educational credit time be subtracted from an inmate's projected release date, effectively reducing the amount of time the inmate is actually required to serve by the full amount of the credit.

In January and June 2000, Ellsworth earned and was awarded two bachelor's degrees from Indiana University. In accordance with the statute, the DOC gave Ellsworth two years of credit time for each of these degrees and subtracted the total four years of credit from Ellsworth's projected release date. Later that same year, Ellsworth completed a substance abuse program which entitled him to ninety days of credit time and the DOC granted this time as well.

In March 2001, DOC staff realized that the total educational credit time granted to Ellsworth exceeded the four-year maximum permitted by statute. The DOC therefore revoked the credit time in excess of four years. Part of the four years of credit that the DOC allowed Ellsworth to retain was the one year of credit for the associate's degree earned under the prior version of the statute. Because this one year was subtracted from Ellsworth's total sentence, in spite of his multiple educational achievements, the net result of his educational credits was to advance his projected release date by three and one-half years, not the four-year maximum allowed by the statute. When Ellsworth learned of this result, he attempted to return his associate's degree so that he could gain the full credit time benefit of his second bachelor's degree, but the awarding institution refused to accept the returned degree.

Ellsworth filed a writ of habeas corpus arguing that he was entitled to release according to the appropriate calculation of his educational credit time, which would advance his projected release date four years (the statutory maximum). The DOC opposed the petition, contending that Ellsworth's interpretation was contrary to the plain meaning of the statute.

After a hearing, the trial court entered an order finding that Ellsworth was entitled to the ameliorative effects of the 1999 revision of the statute and requiring the DOC to release him. The DOC now appeals.[3]

## DISCUSSION AND DECISION

The DOC argues that the trial court's decision is contrary to the plain, unambiguous language of the statute. The instant case involves a question of statutory interpretation. The interpretation of a statute is a question of law reserved for the courts. *Indiana Family & Soc. Servs. Admin. v. Radigan*, 755 N.E.2d 617, 620 (Ind.Ct.App.2001); *South Bend Tribune v. South Bend Cmty. Sch. Corp.*, 740 N.E.2d 937, 938 (Ind.Ct.App.2000). Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Radigan*, 755 N.E.2d at 620; *South Bend Tribune*, 740 N.E.2d at 938; *Wayne Metal Prods. Co., Inc. v. Indiana Dep't of Envtl. Mgmt.*, 721 N.E.2d 316, 317 (Ind.Ct.App.1999), *trans. denied* (2000).

Our initial inquiry is whether the statute is clear and unambiguous on its face. *Radigan*, 755 N.E.2d at 622. When a statute is clear and unambiguous on its face, this court does not interpret the statute. *South Bend Tribune*, 740 N.E.2d at 938; *Wayne Metal Prods.*, 721 N.E.2d at 317. Instead we must hold the statute to its

**3.** We hereby deny the request for oral argument, finding the briefs of the parties suffi-

ciently develop their arguments on appeal.

clear and plain meaning. *South Bend Tribune,* 740 N.E.2d at 938. Construction is warranted only where a statute is susceptible to more than one interpretation. *Radigan,* 755 N.E.2d at 622. In such cases, we must ascertain the legislative intent and interpret the statute so as to effectuate that intent. *Id.; Diaz v. State,* 753 N.E.2d 724, 729 (Ind.Ct.App.2001), *trans. denied; Wayne Metal Prods.,* 721 N.E.2d at 317.

Words and phrases in a single section are construed together with the other parts of the same section and with the statute as a whole, in order that the spirit and purpose of the statute is carried out. *Radigan,* 755 N.E.2d at 622. Moreover, we view the statute within the context of the entire act rather than in isolation. *Id.* Finally, where a statute is reasonably susceptible to more than one interpretation, we must consider the consequences of a particular construction. *Id.*

In pertinent part, IC 35–50–6–3.3 provides that:

"(a) In addition to any credit time a person earns under subsection (b) or section 3 of this chapter, a person earns credit time if the person:

(1) is in credit Class I;

(2) has demonstrated a pattern consistent with rehabilitation; and

(3) successfully completes requirements to obtain one (1) of the following:

. . . .

(C) An associate's degree from an approved institution of higher learning (as defined under IC 20–12–21–3).

(D) A bachelor's degree from an approved institution of higher learning (as defined under IC 20–12–21–3).

(b) In addition to any credit time that a person earns under subsection (a) or section 3 of this chapter, a person may earn credit time if, while confined by the department of correction, the person:

(1) is in credit Class I;

(2) demonstrates a pattern consistent with rehabilitation; and

(3) successfully completes requirements to obtain at least one (1) of the following:

. . . .

(B) A certificate of completion of a substance abuse program approved by the department of correction.

. . . .

(d) The amount of credit time a person may earn under this section is the following:

. . . .

(3) One (1) year for completion of an associate's degree.

(4) Two (2) years for completion of a bachelor's degree.

. . . .

(6) Not more than a total of six (6) months of credit, as determined by the department of correction, for the completion of one (1) or more substance abuse programs approved by the department of correction.

. . . .

(e) Credit time earned by a person under this section is subtracted from the release date that would otherwise apply to the person after subtracting all other credit time earned by the person.

. . . .

(h) Subsection (e) applies only to a person who completes at least a portion of the degree or program requirements under subsection (a) or (b) after June 30, 1999. Credit time earned by a person under subsection (a) for a diploma or

degree completed before July 1, 1999, shall be subtracted from the period of imprisonment imposed on the person by the sentencing court.

(i) The maximum amount of credit time a person may earn under this section is the lesser of:

(1) four (4) years; or

(2) one-third (⅓) of the person's total applicable credit time."

Prior to 1999, subsection (e) required the credit time to be subtracted from the "period of imprisonment imposed on the person by the sentencing court" rather than the "minimum release date of the sentence imposed by the court." Subsection (h) provides that the former version of the statute should continue to be applied to credit time earned prior to the amendment.

■ The trial court determined that Ellsworth was entitled to the ameliorative effect of the 1999 amendment to the educational credit time statute. Under the doctrine of amelioration, a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime. *DeSantis v. State,* 760 N.E.2d 641, 645 (Ind.Ct.App. 2001), *adopted on trans.* 778 N.E.2d 787 (Ind.2002); *Renfroe v. State,* 743 N.E.2d 299, 300–01 (Ind.Ct.App.2001). Although the doctrine of amelioration does not strictly apply in cases involving post-sentence education credit, as opposed to a substantive sentencing provision, this court has applied the principle to avoid subjecting an inmate to an amendment to the statute that would effectively deprive him of credit time. *See Renfroe,* 743 N.E.2d at 301. *But see Winbush v. State,* 776 N.E.2d 1219, 1225 (Ind.Ct.App.2002), *trans. denied* (2003) (noting courts' disin-

clination to extend doctrine of amelioration beyond strict sense of doctrine: amendment to statute is ameliorative only if maximum penalty under new version of statute is shorter than maximum penalty under old version of statute i.e., where maximum sentence is reduced).

We likewise hold that Ellsworth should receive the benefit of the 1999 amendment to the statute under the limited circumstances presented here, where he was entitled to credit time in excess of the statutory maximum for degrees earned after the statutory change. The DOC maintains that the plain meaning of subsection (h) of the statute requires it to deduct Ellsworth's credit for his associate's degree from his "total period of imprisonment" because he completed it before 1999. We have no quarrel with this premise. However, in cases like this one, where an inmate has pre–1999 education credit, plus the maximum allowable post–1999 credit, nothing in the language of the statute prevents the DOC from striking the pre–1999 credit in order to give the inmate the benefit of the full four years of his or her post–1999 educational credits. Because it encourages further educational attainments, this result is consistent with the legislative intent underlying the credit time statute, which we have previously determined is to enhance rehabilitation through education. *Moshenek v. Anderson,* 718 N.E.2d 811, 813 (Ind.Ct. App.1999). As we have stated, "discouraging a person from pursuing further education flies in the face of the legislature's intent." *Id.* at 814. *See also Diaz,* 753 N.E.2d at 729 ("Inmates should be rewarded for earning diplomas and degrees...."). Here, Ellsworth's attempts at rehabilitation through education should be lauded. Rehabilitation, after all, is the goal of Indiana's penal system. "The penal code shall be founded on the principles

of reformation, and not of vindictive justice." Ind. Const., Art. 1, § 18.

Affirmed.

SHARPNACK, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I fully concur in the opinion of the majority giving ameliorative effect to the General Assembly's 1999 amendment to I.C. § 35–50–6–3.3. In doing so, however, I must acknowledge that the opinion authored in *Winbush v. State,* 776 N.E.2d 1219 (Ind.Ct.App.2002), *trans. denied,* might seem to preclude that concurrence.

In *Winbush,* we were considering a statutory amendment which permitted suspension of a portion of a minimum sentence when the previous version of the statute did not permit such suspension. We there held:

> "Because the amendment would have allowed the trial court to suspend part or all of Russell's minimum sentence, the amended statute would appear to be ameliorative according to the generally accepted definition of ameliorate: 'to make better.' *See* BLACK'S LAW DICTIONARY 80 (7th ed.1999); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 67 (1976). However, case law has interpreted an amendment to a statute to be ameliorative only if the maximum penalty under the new version of the statute is shorter than the maximum penalty under the old version of the statute." *Winbush,* 776 N.E.2d at 1225.

The case before us does not concern a sentencing statute as such. I therefore am of the view that we are free to afford relief to a convicted person with respect to his projected release date without altering the original sentence imposed, whether with regard to the maximum sentence permissible at the time of sentencing or otherwise, e.g. with respect to suspension of a portion of the sentence imposed.

I do not view *Indiana Dep't of Envtl. Mgmt. v. Med. Disposal Servs. Inc.,* 729 N.E.2d 577 (Ind.2000) ("*MDSI*"), to preclude amelioration in the situation before us. In *Winbush,* we cited *MDSI* noting that in that case, our Supreme Court had chosen not to apply the doctrine of amelioration in a case involving civil penalties for failure to comply with IDEM permit requirements.

The original litigation had finally resolved MDSI's obligation to operate under a permit but had left the matter of civil penalties unresolved. After the original litigation had become final by virtue of the Supreme Court's denial of transfer, but before resolution of the issue of civil penalties for the permit violation, the General Assembly amended the applicable statute and exempted the medical waste disposal activities of MDSI from IDEM permit requirements.

In determining to not relieve MDSI from imposition of civil penalties, the court's holding was premised upon the conclusion that "[t]he legislature's *subsequent* legalization of MDSI's activities, however, did not relieve MDSI of the obligation it faced at the time." 729 N.E.2d at 581 (emphasis supplied). This holding was clearly based upon the fact that MDSI's activities were illegal at the time in question and that the civil penalty consequences attached to the illegal acts at the time they were done.

Our situation is wholly unlike that in *MDSI.* Here the academic achievements of an inmate take place subsequent to his sentencing and incarceration. The impact of education credits is therefore felt prospectively with regard to a projected release date. It does not retroactively alter

the sentence originally imposed for his criminal acts. For this reason I do not construe *MDSI* as an impediment to the relief we afford today.