**Rima M. MARONEY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 03A05–0508–CR–434.**

Court of Appeals of Indiana.

June 26, 2006.

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Rima M. Maroney ("Maroney") appeals the Bartholomew Circuit Court's order requiring her to reimburse the Bartholomew County Sheriff for the costs of extraditing Maroney to Indiana from her bail bond. We are presented with the following restated issues for review:

I.   Whether the trial court erred when it ordered Maroney to reimburse the Bartholomew County Sheriff for the costs of her extradition without conducting an indigency hearing; and,

II.  Whether the trial court may subtract Maroney's extradition costs from her bail bond.

Concluding that the trial court erred when it failed to conduct an indigency hearing prior to ordering Maroney to reimburse the Bartholomew County Sheriff for her extradition costs, but that extradition costs may properly be subtracted from Maroney's bail bond, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On March 27, 2004, Maroney was visiting with Susan Burton in Bartholomew County. After "some problems developed," the police arrived and instructed Maroney to leave and not come back until later that evening. Tr. p. 16. Maroney admittedly returned sooner than she should have and was arrested. Police offi-

cers searched Maroney and discovered methamphetamine. As a result, the State charged Maroney with Class D felony methamphetamine possession[1] and Class A misdemeanor criminal trespass.[2]

On March 29, 2004, Maroney's bond was set at $15,000 or ten percent cash. During Maroney's initial hearing on March 30, 2004, the trial court determined that Maroney was uncooperative, increased her bond to $250,000 or ten percent cash and are scheduled the initial hearing until April 1, 2004. Appellant's App. p. 7. During the initial hearing, the trial court reduced Maroney's bond to the original amount of $15,000 or ten percent cash. Appellant's App. p. 9. On April 19, 2004, Maroney satisfied her bond requirement via a $1500 cash payment provided by an acquaintance. During an April 26, 2004 status hearing, Maroney advised the court that she could not afford to hire counsel. Appellant's App. p. 12. The court then gave Maroney a list of attorneys who handle criminal matters in Bartholomew County and set another status hearing for May 24, 2004.

Prior to the May 24 status hearing, Sean Thomasson and David Hooper, privately retained attorneys, entered their appearance for Maroney. Appellant's App. p. 14. However, on April 4, 2005, counsel for Maroney informed the court that they had not had any contact with their client. The court ordered Maroney to appear on April 18, 2005, or a warrant would be issued for her arrest. Appellant's App. p. 62. After Maroney failed to appear, the Bartholomew County Sheriff's Department extradited her from Idaho at a cost of $1732.36. Appellant's App. p. 10.

On May 27, 2005, Maroney pleaded guilty to Class D felony methamphetamine possession and Class A misdemeanor criminal trespass. Appellant's App. p. 89. On June 27, 2005, the court sentenced Maroney to one year for each conviction, to be served concurrently. In addition, the court ordered Maroney to pay $136 in court costs, a $50 bond fee, and extradition costs of $1732.36. Maroney's bail bond of $1500 was to be applied first to the court costs and bond fee, then to the extradition costs, resulting in a balance of $418.36 to be paid by Maroney. On July 11, 2005, Maroney requested the appointment of an attorney to represent her for appeal. Appellant's App. p. 105. Maroney now appeals. Additional facts will be provided as necessary.

## I. Indigency Hearing

Maroney contends that the trial court erred when it failed to conduct an indigency hearing prior to imposing fines and costs as part of her sentence. Initially, we note that the State concedes that we should remand on this issue with instructions to hold an indigency hearing.[3] We agree.

Our bail bond statute, which can be found in Indiana Code section 35–33–8–3.2, provides, in relevant part, as follows:

(a) A court may admit a defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings,

(1) Require the defendant to:

    (A) execute a bail bond with sufficient solvent securities;

    (B) deposit cash or securities in an amount equal to the bail;

---

1. Ind.Code § 35–48–4–6(a) (2004 & Supp. 2006).

2. Ind.Code § 35–43–2–2(a)(1) (2004).

3. Br. of Appellee at 3.

* * *

(2) Require the defendant to execute a bail bond by depositing cash or securities with the clerk of court in an amount not less than ten percent (10%) of the bail. If the defendant is convicted, the court may retain all or part of the cash or securities to pay fines, costs, fees, and restitution, if ordered by the court. A portion of the deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee. The clerk shall also retain from the deposit under this subdivision the following:

(A) Fines, costs, fees, and restitution as ordered by the court.

(B) Publicly paid costs of representation that shall be disposed of in accordance with subsection (b).

Ind.Code § 35–33–8–3.2 (2004 & Supp. 2006).

■ "When the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent." Ind.Code § 33–37–2–3(a) (2004). "However, a hearing is not required when the trial court appoints pauper counsel and makes it clear to the defendant in its sentencing statement that [she] will not be imprisoned for failing to pay court costs." *Goffinet v. State*, 775 N.E.2d 1227, 1234 (Ind.Ct.App. 2002) (citing *Wooden v. State*, 757 N.E.2d 212, 218 (Ind.Ct.App.2001)).

■ Here, the record indicates that on June 27, 2005, Maroney was ordered to pay costs and fees associated with her prosecution. The trial court did not appoint appellate counsel on Maroney's behalf until July 20, 2005. At no time did the trial court conduct a hearing to determine whether Maroney was indigent. Moreover, when the trial court appointed pauper appellate counsel for Maroney, it failed to make clear to her, either in its sentencing statement or subsequent order, that she would not be imprisoned for failing to pay court costs. *See Goffinet*, 775 N.E.2d at 1234. Therefore, because Maroney was ordered to pay costs without an indigency hearing, the proper remedy is to remand for such a hearing. *See Everroad v. State*, 730 N.E.2d 222, 229 (Ind.Ct.App. 2000) (holding that a finding of indigency for appointing appellate counsel is not conclusive as to a defendant's ability to pay costs).

## II. Extradition Expenses

■ Maroney also contends that extradition expenses are not "costs" under the bail bond statute, Indiana Code section 35–33–8–3.2, and therefore may not be retained from a bond deposit following conviction. This is a question of first impression in Indiana.

■ The interpretation of a statute is a question of law reserved for the courts. *Cotton v. Ellsworth*, 788 N.E.2d 867, 869 (Ind.Ct.App.2003). Questions of law are reviewed under a de novo standard. Our initial inquiry is whether the statute is clear and unambiguous on its face. *Id.* If it is, we will not interpret the statute. *Id.* Instead, we hold the statute to its clear and plain meaning. *Id.* at 869–70. Construction is warranted only where a statute is susceptible to more than one interpretation. *Id.* at 870. In such cases, we must ascertain the legislative intent and interpret the statute so as to effectuate that intent. *Id.* During this process, we read a statute as a whole and strive to give effect to all of its provisions. *Skrzypczak v. State Farm Mut. Auto. Ins. Co.*, 668 N.E.2d 291, 295 (Ind.Ct.App. 1996). When construing a statute, all sections of an act are viewed together. *Saylor v. State*, 765 N.E.2d 535, 564 (Ind. 2002).

As an initial matter, we have previously held that extradition expenses are reim-

bursement costs that a court may order a defendant to pay at sentencing. *Vestal v. State,* 745 N.E.2d 249, 253 (Ind.Ct.App. 2001), *aff'd in relevant part,* 773 N.E.2d 805, 807 (Ind.2002). Maroney does not dispute that extradition expenses are classified as reimbursement costs that a court may order at sentencing. Instead, she argues that extradition expenses are not "costs" that may be retained from a defendant's bond deposit under Indiana Code section 35–33–8–3.2. *Vestal* does not address this issue. *See Zanders v. State,* 800 N.E.2d 942, 945 (Ind.Ct.App.2003) (leaving the question of whether extradition expenses are "costs" under the bail bond statute for a later date).

Section 35–33–8–3.2(a)(2) provides, in relevant part, "If the defendant is convicted, the court may retain all or part of the cash or securities to pay fines, *costs,* fees, and restitution, if ordered by the court." Ind.Code § 35–33–8–3.2(a)(2) (2004 & Supp.2006) (emphasis added). Presently, as it is used in the bail bond statute, the word "costs" is ambiguous. As the State accurately points out, the Indiana Code contains no definition of "costs" relevant to its inclusion in the bail bond statute. *See* Br. of Appellee at 5. As such, the word "costs" must be given its common meaning. *See, e.g., KLLM, Inc. v. Legg,* 826 N.E.2d 136, 140 (Ind.Ct.App.2005) ("[T]he words of Indiana's Guest Statute must be accorded their common meaning unless a different purpose is clearly manifested by the statute itself."). The common meaning of the term "costs," however, does not enlighten us. *See* 7 Ind. Law Encycl. Costs § 1 (2005) (defining "costs" as "allowances authorized by statute to reimburse the successful party to litigation for expenses incurred in his or her prosecution or defense.").

Other jurisdictions have addressed statutes awarding costs of "investigation or prosecution" and held that costs of prosecution included extradition costs. *See State v. Ryyth,* 626 N.W.2d 290 (S.D.2001) (concluding, as a matter of first impression in South Dakota, that extradition costs incurred by the county after the defendant violated his probation in a different state were prosecution costs); *People v. Lemons,* 824 P.2d 56 (Colo.Ct.App.1991) (extradition costs to bring defendant to answer charges were costs of prosecution and improperly designated as restitution); *State v. Balsam,* 130 Ariz. 452, 636 P.2d 1234 (1981) (sum expended to send a deputy sheriff to Ohio, where defendant was arrested, and bring him back to Arizona for prosecution was a prosecution cost).

These decisions are instructive. The majority of jurisdictions having considered the question regarding extradition expenses as costs have held that the definition of prosecution costs includes extradition costs. Their logic is sound and persuasive. *See Ryyth,* 626 N.W.2d at 293. In line with the majority of other jurisdictions, we conclude that extradition expenses are "costs" that may be retained from a defendant's bond deposit under Indiana Code section 35–33–8–3.2.

### Conclusion

Under these facts and circumstances, we conclude that the trial court erred when it failed to conduct an indigency hearing prior to ordering Maroney to reimburse the Bartholomew County Sheriff for her extradition costs. On remand, we note that extradition costs may be subtracted from Maroney's bail bond. As such, we reverse and remand for proceedings consistent with this opinion.

ROBB, J., and VAIDIK, J., concur.