FILED
COURT OF APPEALS
DIVISION II

2014 JUL 29 AM 11: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>    v.<br><br>KRISTINA MARIE CAWYER,<br><br>                    Appellant. | No. 44271-0-II<br><br><br><br>PUBLISHED OPINION |

WORSWICK, J. — Kristina Cawyer appeals the sentencing court's restitution order, entered following her *Alford*[1] plea to two counts of first degree custodial interference. Cawyer argues that the sentencing court exceeded its statutory authority by ordering her to pay restitution for the State's extradition expenses, which were incurred to extradite her from Ohio to Washington. Cawyer also argues that RCW 10.01.160 did not give the sentencing court the authority to order her to pay the State's extradition expenses as a court cost. We hold that the sentencing court exceeded its authority under the restitution statute, RCW 9.94A.753, by imposing restitution for the State's extradition expenses, but that RCW 10.01.160 gives the sentencing court authority to require the defendant to pay the State's extradition expenses as a court cost. We affirm the amount ordered for the State's extradition expenses, and remand for the sentencing court to modify its restitution order consistent with this opinion.

---

[1] *N. Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

FACTS

Kristina Cawyer and her former husband Samuel[2] lived in Washington State, where they shared custody of two minor children pursuant to a parenting plan. Cawyer then moved with the children from Washington to South Carolina. Cawyer failed to comply with two separate court orders requiring her to return the children to Samuel in Washington. The State charged Cawyer with two counts of first degree custodial interference.[3]

Cawyer moved with the children to Ohio, where she was arrested and jailed pursuant to a warrant. The Clallam County Prosecutor's Office incurred expenses to extradite Cawyer from Ohio to Washington to face the custodial interference charges.

Cawyer entered an Alford plea to both counts of first degree custodial interference. The sentencing court sentenced Cawyer to 30 days on each count, running concurrently, and gave her credit for time served. The sentencing court did not impose a suspended sentence or probation, but ordered Cawyer to pay $2,707.56 in restitution to the Clallam County Prosecutor's Office for expenses it incurred to extradite her to Washington.[4] Cawyer objected below to the order requiring her to pay restitution for the State's extradition expenses. The sentencing court justified the restitution order as follows:

> Again, it would appear to me that an extradition is different than what the statute contemplates. It is an expense which is not ordinarily incurred. It's occasionally

---

[2] Because Kristina and Samuel share the same last name, we use Samuel's first name for clarity, intending no disrespect.

[3] RCW 9A.40.060(2).

[4] The restitution award for extradition expenses was awarded to the Clallam County Prosecutor's Office. But the State of Washington is the party to the appeal. For clarity, we refer to the Clallam County Prosecutor's Office and the State collectively as "the State."

incurred. And I would note that the felony judgment and sentence form has actually [sic] a box for extradition costs built into it, which indicates at least somebody at the State level contemplated that those costs might be incurred and would be compensable.

. . . .

I'm going to impose the restitution costs, under the circumstances as I read the statute it allows the State to have those extraordinary sort of costs that are not incumbent necessarily for the administration of justice or for having a jury trial or those sorts of things.

Specifically in a case such as this, where there was [sic] a third party provided services to get her here, I think it's reasonable to require her to pay those as part of the consequences of her actions.

Verbatim Report of Proceedings (VRP) at 48-51. Cawyer appeals the restitution order.

## ANALYSIS

Cawyer argues that the sentencing court did not have authority to order her to pay the State's extradition expenses as restitution under RCW 9.94A.753, or as a court cost under RCW 10.01.160. We hold that the sentencing court exceeded its authority under the restitution statute, RCW 9.94A.753, by imposing restitution for the State's extradition expenses. But we hold that the sentencing court had authority to order Cawyer to pay $2,707.56 for the State's extradition expenses as a court cost under RCW 10.01.160.

I. THE STATE'S EXTRADITION EXPENSES AS RESTITUTION UNDER RCW 9.94A.753

Cawyer argues that because the State was not a victim of Cawyer's custodial interference, the sentencing court exceeded its statutory authority under the restitution statute by imposing restitution for the State's extradition expenses.

We reverse a sentencing court's restitution determination only for a clear abuse of discretion or misapplication of law. *State v. Corona*, 164 Wn. App. 76, 78, 261 P.3d 680 (2011). "A [sentencing] court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds; this standard is also violated when a [sentencing] court makes a

3

reasonable decision but applies the wrong legal standard or bases its ruling on an erroneous view of the law." *Corona*, 164 Wn. App. at 78-79. When, as here, we review whether the sentencing court applied the wrong legal standard or based its ruling on an erroneous view of the law, we review de novo the choice of law and its application to the facts of the case. *Corona*, 164 Wn. App. at 79.

The sentencing court's authority to order restitution is derived entirely from statute. *State v. Smith*, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992). RCW 9.94A.753 authorizes the sentencing court to impose restitution against a criminal defendant. RCW 9.94A.753(3) places limits on this authority, stating in part:

> [R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury.
> . . . The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

Restitution is appropriate only if a causal connection exists between the defendant's offense and the victim's injuries for which restitution is sought. *State v. Vinyard*, 50 Wn. App. 888, 893, 751 P.2d 339 (1988). A causal connection exists if "but for" the offense, the loss or damages to a victim's property would not have occurred. *State v. Tobin*, 161 Wn.2d 517, 519, 524-25, 166 P.3d 1167 (2007). The State must prove this causal connection between the expenses and the offense by a preponderance of the evidence. *State v. Kinneman*, 122 Wn. App. 850, 860, 95 P.3d 1277 (2004) *aff'd*, 155 Wn.2d 272, 119 P.3d 350 (2005).

The sentencing court may award restitution only to victims. *Kinneman*, 122 Wn. App. at 866. A victim is "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(53).

4

While restitution is limited to victims, the definition of "victim" is not limited to the offense's *immediate* victim. *Tobin*, 161 Wn.2d at 524; *Kinneman*, 122 Wn. App. at 866. Rather, an individual or entity is a "victim" of an offense if the offense directly victimized that individual or entity, or if the offense caused that individual or entity to incur expenses to assist others who were directly victimized by the offense. *See State v. Davison*, 116 Wn.2d 917, 920-21, 809 P.2d 1374 (1991); *Kinneman*, 122 Wn. App. at 866-67; *State v. Ewing*, 102 Wn. App. 349, 350, 7 P.3d 835 (2000).

In *Tobin*, our Supreme Court upheld the sentencing court's order imposing restitution for the State's expenses where the defendant's offenses directly victimized the State. 161 Wn.2d at 519-20, 528. In *Tobin*, the defendant pleaded guilty to offenses arising out of an illegal crab and geoduck harvesting scheme. 161 Wn.2d at 520-21. The sentencing court ordered the defendant to pay restitution for expenses that the State incurred to investigate the defendant's case and to resurvey the crab-and-geoduck-inhabited lands. 161 Wn.2d at 522. Our Supreme Court upheld the order imposing restitution for the State's expenses because the offenses directly victimized the State, and thereby caused the State to incur extraordinary and unusual expenses. *See* 161 Wn.2d at 527-28.

*Tobin* is distinguishable from this case. In *Tobin*, the defendant engaged in illegal crab and geoduck harvesting. Tobin's offenses directly victimized the State by depleting the State's crab and geoduck population and by damaging the State's environment. 161 Wn.2d at 519, 529-30. Because the offenses directly victimized the State, the sentencing court in *Tobin* had authority to impose restitution for the State's expenses.

5

No. 44271-0-II

Here, in contrast, Cawyer was convicted of custodial interference—an offense that directly victimized Samuel and the children. But Cawyer's offense neither directly victimized the State, nor caused the State to incur extradition expenses to assist those who were directly victimized by Cawyer's offense. Rather, Cawyer's offense caused the State to incur extradition expenses to assist its prosecution of Cawyer. Thus, we hold that the State does not qualify as a victim of Cawyer's custodial interference because Cawyer's offense neither directly victimized the State nor caused the State to incur expenses to assist those who were directly victimized by Cawyer's offense. Therefore, the sentencing court erred by requiring Cawyer to pay the State's extradition expenses as restitution.[5]

## II. THE STATE'S EXTRADITION EXPENSES AS A COURT COST UNDER RCW 10.01.160

The State argues that the sentencing court had authority to award the extradition expenses as a court cost under RCW 10.01.160. Cawyer responds that RCW 10.01.160 did not give the sentencing court authority to order her to pay the State's extradition expenses as a court cost for two reasons. First, Cawyer argues that the legislature's removal of a clause in former RCW 9.94A.120(10) (1988), which gave the sentencing court authority to impose a court cost for extradition expenses, revealed the legislature's intent to deprive the sentencing court of that authority. Second, Cawyer argues that RCW 10.01.160 itself does not give the sentencing court authority to impose a court cost for extradition expenses. We agree with the State.

---

[5] Our holding that a sentencing court may not impose restitution for the State's extradition expenses, because it was not a victim of the offense, is consistent with the holdings of the majority of states to have considered this issue. *See, e.g., State v. Wildman*, 296 N.J. Super. 565, 687 A.2d 340, 341-42 (1997) (extradition expenses cannot be recovered by a county under the guise of restitution because a county does not qualify as a victim who has sustained a loss); *State v. Maupin*, 166 Ariz. 250, 801 P.2d 485, 488 (Ct. App. 1990) ("extending the term 'victim' to include a county seeking reimbursement for extradition costs would strain the commonly accepted meaning of the word 'victim'").

No. 44271-0-II

The sentencing court required Cawyer to pay extradition expenses in a restitution order. But we may uphold the sentencing court's order where it reaches the right result, but for the wrong reason. *Hoflin v. City of Ocean Shores*, 121 Wn.2d 113, 134, 847 P.2d 428 (1993); *see also Tropiano v. City of Tacoma*, 105 Wn.2d 873, 876-77, 718 P.2d 801 (1986) (we may affirm the sentencing court on any correct ground within the pleadings and proof).

We review statutory interpretation de novo. *In re Det. of Williams*, 147 Wn.2d 476, 486, 55 P.3d 597 (2002). We interpret statutes so as to give effect to legislative intent. *In re Pers. Restraint of Nichols*, 120 Wn. App. 425, 431, 85 P.3d 955 (2004). If a statute's meaning is plain on its face, we give effect to that plain meaning. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). If the statute is susceptible to more than one reasonable interpretation, it is deemed ambiguous and we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

The sentencing court's authority to impose court costs and fees is statutory. *See State v. Hathaway*, 161 Wn. App. 634, 652, 251 P.3d 253 (2011). Because statutes imposing court costs are in derogation of common law, they should be strictly construed. *State v. Moon*, 124 Wn. App. 190, 195, 100 P.3d 357 (2004).

A.    *Removal of Extradition Expenses from Former RCW 9.94A.120(10) (1988)*

Cawyer argues that the legislature's removal of a clause in former RCW 9.94A.120(10) (1988),[6] which authorized the sentencing court's imposition of a court cost for extradition

---

[6] Former RCW 9.94A.120 (2001) was recodified as RCW 9.94A.505. *See* LAWS OF 2001, ch. 10, § 6; *compare* former RCW 9.94A.120 (2001) *with* RCW 9.94A.505.

7

expenses, revealed the legislature's intent to deprive the sentencing court of this authority. LAWS OF 1989, ch. 252, § 4. The State argues that a closer reading of the amendment reveals the legislature's intent to consolidate extradition expenses into the broader cost category of "legal financial obligations." We agree with the State.

In 1989, the legislature completely rewrote former RCW 9.94A.120(10):

> If a sentence imposed includes ((a fine or restitution)) payment of a legal financial obligation, the sentence shall specify ((a reasonable manner and time in which the fine or restitution shall be paid. Restitution to victims shall be paid prior to any other payments of monetary obligations. In any sentence under this chapter the court may also require the offender to make such monetary payments, on such terms as it deems appropriate under the circumstances, as are necessary (a) *to pay court costs, including reimbursement of the state for costs of extradition if return to this state by extradition was required,* (b) to make recoupment of the cost of defense attorney's fees if counsel is provided at public expense, (c) to contribute to a county or interlocal drug fund, and (d) to make such other payments as provided by law)) the total amount of the legal financial obligation owed, and shall require the offender to pay a specified monthly sum toward that legal financial obligation. Restitution to victims shall be paid prior to any other payments of monetary obligations.

LAWS OF 1989, ch. 252, § 4 (emphasis added); *compare* former RCW 9.94A.120(10) (1988) *with* former RCW 9.94A.120(10) (1990). This rewrite removed a clause granting the sentencing court the authority to impose a court cost for "reimbursement of the state for costs of extradition." *See* LAWS OF 1989, ch. 252, § 4. But the rewrite also removed clauses granting the sentencing court the authority to order court costs, defense attorney fees, contributions to drug funds, and "other payments as provided by law." *See* LAWS OF 1989, ch. 252, § 4. In place of these removed cost categories, the legislature added a new cost category: "legal financial obligations." LAWS OF 1989, ch. 252, § 4.

The legislature's comprehensive rewrite of former RCW 9.94.120(10) (1988) does not reveal a legislative intent to remove the sentencing court's authority to impose a court cost for

extradition expenses. Rather, it reveals a legislative intent to consolidate cost categories, including extradition expenses, into a new catch-all cost category of "legal financial obligations." Thus, we hold that the legislature did not intend to remove the sentencing court's authority to impose a court cost for extradition expenses by rewriting former RCW 9.94A.120(10) (1988).

B.       *Authority To Impose a Court Cost for Extradition Expenses Under RCW 10.01.160*

Cawyer argues that RCW 10.01.160 does not give the sentencing court authority to impose a court cost for extradition expenses for two reasons. First, Cawyer argues that extradition expenses do not constitute "expenses specially incurred by the state in prosecuting the defendant." *See* RCW 10.01.160(2). Second, Cawyer argues that the legislature revealed its intent to exclude extradition expenses from RCW 10.01.160 by including clauses that explicitly authorize court costs for "[e]xpenses incurred for serving of warrants for failure to appear." We disagree with Cawyer's two arguments.

1. *Expenses Specially Incurred by the State in Prosecuting the Defendant*

RCW 10.01.160 states in part:

(1) The court may require a defendant to pay costs. Costs may be imposed only upon a convicted defendant, except for . . . costs imposed upon a defendant for preparing and serving a warrant for failure to appear.

(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant . . . . Expenses incurred for serving of warrants for failure to appear . . . may be included in costs the court may require a defendant to pay.

RCW 10.01.160 gives the sentencing court authority to order the defendant to pay court costs, but limits those court costs to "expenses specially incurred by the state in prosecuting the defendant." Division Three of this court held that RCW 10.01.160 authorizes the sentencing

court to impose a court cost for extradition expenses. *State v. Lass*, 55 Wn. App. 300, 307-08, 777 P.2d 539 (1988). We agree with Division Three.

We consider Oregon's interpretation of former OR. REV. STAT. § 161.665 (1971) when interpreting RCW 10.01.160 because the version of RCW 10.01.160 that the legislature adopted was based on former OR. REV. STAT. § 161.665. *Utter v. Dep't of Soc. & Health Servs.*, 140 Wn. App. 293, 303, 309, 165 P.3d 399 (2007); *see also State v. Carroll*, 81 Wn.2d 95, 109, 500 P.2d 115 (1972). An Oregon appeals court held that former OR. REV. STAT. § 161.665 authorized the sentencing court to impose a court cost for expenses incurred to transport the defendant to Oregon to face criminal charges as an expense "specially incurred by the state in prosecuting the defendant." *State v. Armstrong*, 44 Or. App. 219, 605 P.2d 736, 737-38 (Ct. App. 1980). Like Oregon, the majority of jurisdictions to have considered the issue have held that "prosecution costs include[] extradition costs." *Maroney v. State*, 849 N.E.2d 745, 749 (Ind. Ct. App. 2006).

Consistent with this authority, we hold that RCW 10.01.160's clause "expenses specially incurred by the state in prosecuting the defendant" includes extradition expenses. This is because extradition expenses are incurred by the State in the *special* situation of prosecuting a defendant in Washington State who is initially located outside of this state.

2. *Expenses Incurred for Serving of Warrants for Failure To Appear*

Cawyer argues that the legislature intended to exclude extradition expenses from RCW 10.01.160 because RCW 10.01.160 includes clauses that authorize the imposition of a court cost for "[e]xpenses incurred for serving of warrants for failure to appear." We disagree.[7]

---

[7] Cawyer's warrant was not a warrant for failure to appear. VRP at 47-48.

Expressio unius est exclusio alterius is a canon of statutory construction which states that to express one thing in a statute implies the exclusion of the other. *State v. Bravo Ortega*, 177 Wn.2d 116, 124, 297 P.3d 57 (2013). In other words, "where a statute specifically designates the things or classes of things on which it operates—an inference arises in law that the legislature intentionally omitted all things or classes of things omitted from it." *Mason v. Ga.-Pac. Corp.*, 166 Wn. App. 859, 864, 271 P.3d 381, *review denied*, 174 Wn.2d 1015 (2012).

RCW 10.01.160 includes clauses that authorize and limit the imposition of court costs for "[e]xpenses incurred for serving of warrants for failure to appear." But this wording does not reveal a legislative intent to exclude extradition expenses for two reasons.

First, the legislature did not omit extradition expenses from RCW 10.01.160. Rather, it included extradition expenses by allowing the sentencing court to impose a court cost for "expenses specially incurred by the state in prosecuting" the defendant. RCW 10.01.160; *see Lass*, 55 Wn. App. at 307-08; *Armstrong*, 605 P.2d at 737-38; *Maroney*, 849 N.E.2d at 749. Thus, no inference arises in law that the legislature intended to omit extradition expenses from RCW 10.01.160 because extradition expenses were not omitted from it.

Second, under RCW 10.01.160(2), "[e]xpenses incurred for serving of warrants for failure to appear" may be imposed upon a defendant who was *not* convicted, unlike other "expenses specially incurred by the [S]tate in prosecuting the defendant." Thus, RCW 10.01.160's clauses that authorize and limit the imposition of a court cost for "[e]xpenses incurred for serving of warrants for failure to appear" reveal a legislative intent to limit a unique court cost that may be collected from a defendant who is *not* convicted, rather than an intent to

No. 44271-0-II

limit which court costs constitute "expenses specially incurred by the state in prosecuting the defendant."

For these two reasons, the provision authorizing the imposition of a court cost for "[e]xpenses incurred for serving of warrants for failure to appear" does not reveal a legislative intent to exclude extradition expenses from RCW 10.01.160. Because RCW 10.01.160 gives the sentencing court statutory authority to impose a court cost for extradition expenses as an expense "specially incurred by the state in prosecuting the defendant," we hold that RCW 10.01.160 gave the sentencing court the authority to order the defendant to pay the State's extradition expenses as a court cost.

We affirm the amount that the sentencing court ordered for the State's extradition expenses under RCW 10.01.160, but reverse that amount's characterization as restitution. We remand for the sentencing court to modify its order consistent with this opinion.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.

12