# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72067-8-I |
| | ) | (Consolidated with |
| Respondent, | ) | No. 72069-4) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| IVAN D. LJUNGHAMMAR, and | ) | UNPUBLISHED OPINION |
| DEBORAH JEAN LJUNGHAMMAR, and | ) | |
| each of them, | ) | |
| | ) | |
| Appellants. | ) | FILED: April 25, 2016 |
| | ) | |

APPELWICK, J. — Ivan and Deborah Ljunghammar were convicted of theft in the first degree for embezzling from Ivan's mother while acting under her power of attorney. The trial court imposed an exceptional sentence for each defendant based on the fact that the crime was a major economic offense and that the victim was particularly vulnerable. Both Ivan and Deborah contend that the State's evidence was insufficient to prove they committed first degree theft, that the State violated their right to silence by emphasizing their failure to provide financial records, and that the trial court erred in imposing exceptional sentences and joint and several restitution. Deborah contends that she was prejudiced by their joint trial. We affirm.

FACTS

Shelarose Ljunghammar was born on October 19, 1928. She was married to Nils Ljunghammar until he passed away in 1998. The couple had four sons: Ralph,[1] Ivan, Keith, and Daryl.

Shelarose owned several rental properties. She handled the bookkeeping for these properties. Shelarose began falling behind in her bookkeeping for the rental properties in the early 2000s. Around 2005, Ivan and his wife, Deborah, started helping Shelarose with her bookkeeping. Ivan also helped Shelarose maintain the rental properties, and he was paid for his work.

In 2007, Shelarose and several of her sons met with Shelarose's attorney to discuss her estate plans. The attorney discussed the possibility of giving someone power of attorney, but Shelarose wanted additional time to consider this possibility. Shortly afterward, on June 13, 2007, Shelarose signed a document giving her son Ivan a general durable power of attorney over her property and finances. The document named Ivan's wife, Deborah, as the alternate in the event that Ivan became unable or unwilling to act. At that time, Ivan and Deborah did not inform Daryl, Ralph, or Keith about the power of attorney.

After Ivan became Shelarose's attorney-in-fact, Ivan and Deborah began limiting Shelarose's interactions with the rest of the family. Shelarose stopped attending family functions. Ralph and Daryl became concerned that Ivan and Deborah were screening their calls to Shelarose—they were unable to reach their

_____

[1] We refer to members of the Ljunghammar family by their first names for clarity. No disrespect is intended.

2

mother by phone. Ivan and Deborah did not notify the rest of the family when Shelarose was hospitalized. And, Ivan and Deborah changed the locks on Shelarose's home.

In 2009, Ralph and Daryl became concerned that Shelarose was no longer living at her home. Ralph contacted Adult Protective Services (APS). Daryl called the police.

On September 24, 2009, Detective Pamela St. John of the Seattle Police Department went to Shelarose's home to do a welfare check. No one answered when Detective St. John knocked on the door. While Detective St. John was looking around the house, Ivan and Deborah arrived. Detective St. John identified herself and asked where Shelarose was. According to Detective St. John, Ivan and Deborah were confrontational and uncooperative, but they eventually revealed that Shelarose was with her caregiver.

Detective St. John returned to Shelarose's home on September 29, 2009 to interview Shelarose in the company of her attorney. On this occasion, she was accompanied by Heidi Wilson from APS. During that interview, Shelarose appeared confused—she could not answer any of Detective St. John's questions about what day of the week it was, who the president was, or her children. And, she did not appear to understand who Wilson or Detective St. John were.

After an investigation, APS petitioned to appoint a guardian for Shelarose. On January 19, 2010, the court appointed Puget Sound Guardians (PSG) to be Shelarose's guardian. The court order also required Ivan and Deborah to provide

an accounting of Shelarose's finances for the time period that Ivan had power of attorney. Ivan and Deborah did not provide an accounting despite multiple court orders directing them to do so.

PSG conducted an independent investigation of Shelarose's finances by collecting records from the banks with which Shelarose had accounts. Then, they attempted to discern what funds may have been misappropriated when Ivan was attorney-in-fact by identifying questionable transactions.

PSG and Ivan reached a settlement agreement in March 2011. And, Ivan confessed to judgment in the amount of $160,000. Judgment was entered against him in the guardianship proceeding.

On August 22, 2012, Ivan and Deborah were charged with first degree theft. The State presented the testimony of numerous witnesses, including members of the Ljunghammar family and employees of PSG.[2] And, a financial analyst for the King County Prosecuting Attorney's Office testified regarding her analysis of Ivan's and Deborah's financial records. Her summaries regarding the transfers of money from Shelarose's accounts to Ivan and Deborah's accounts, and the correlation between these transfers and Ivan and Deborah's mortgage payments, were admitted as exhibits.

The jury convicted both Ivan and Deborah as charged. And, the jury found by special verdict that the crime was a major economic offense and that Ivan and Deborah either knew or should have known that the victim was particularly

---

[2] Shelarose was unavailable for either party to call as a witness at trial.

4

vulnerable. Accordingly, the trial court imposed an exceptional sentence for each defendant. The trial court also ordered Ivan and Deborah to pay restitution in the amount of $160,000, and it made the restitution obligation joint and several. Ivan and Deborah appeal.

## DISCUSSION

Ivan and Deborah challenge the sufficiency of the evidence supporting their convictions for first degree theft. They also argue that the State violated their right against self-incrimination by inviting the jury to infer guilt from the fact that they failed to provide an accounting to PSG. Both assert that the trial court erred in imposing their exceptional sentences and joint and several restitution. And, Deborah contends that she was prejudiced by their joint trial.

I.   Sufficient Evidence of First Degree Theft

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all of the elements beyond a reasonable doubt. State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. Id.

Under RCW 9A.56.020(1)(a), theft means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." A person exerts unauthorized control over property by having it in one's "possession, custody or

control" as attorney or other person authorized to hold possession and appropriating that property to one's own use or the use of someone other than the true owner or person entitled to the property. RCW 9A.56.010(22)(b).

Here, Deborah contends that the State did not present evidence to show that Shelarose's property was in Deborah's possession, custody, or control. She argues that she did not sign any of the checks written on Shelarose's accounts, withdraw or transfer money from Shelarose's accounts, or use Shelarose's credit card. And, she points out that the power of attorney document named her as " 'alternate attorney in fact,' " which gave her power of attorney only if Ivan was unable to exercise his authority.

But, numerous witnesses testified that they observed Deborah assisting Shelarose with her bookkeeping. Ralph recalled a time when Deborah and Shelarose were working on the bookkeeping, and Deborah was writing checks for Shelarose. He testified that Deborah appeared to be covering up the checks as she was writing them. Daryl often saw Deborah helping Shelarose write checks, and he also observed Deborah covering up the books on one occasion. Keith noticed Deborah writing Shelarose's checks for her. Daryl's wife, Kerie, also testified that Deborah would often have Shelarose sign checks, but that Ivan never helped with the bookkeeping.

The evidence also showed that Deborah took possession of Shelarose's funds. Checks from Shelarose to Deborah were deposited in Deborah and Ivan's joint account. Several of these checks contributed to the total amount of

questionable transfers that were identified in the confession of judgment as a breach of fiduciary duty. And, a cashier's check in the amount of $13,500 was made out to Deborah alone and deposited in the joint account.

And, multiple witnesses testified that Deborah represented herself as sharing the power of attorney with Ivan. Ralph testified that in early 2008, Deborah told him and Daryl that she and Ivan had power of attorney. Wilson from APS testified that when she went to Shelarose's home with Detective St. John, Deborah showed them the power of attorney she and Ivan had—she carried the document in her purse. From this evidence, a rational trier of fact could conclude that Deborah exerted control over Shelarose's finances.[3]

Deborah and Ivan both assert that even if they exerted control over Shelarose's finances, the State failed to prove that the money transfers were unauthorized. They contend that Shelarose gave Ivan power of attorney because she wanted him to control her finances. And, they argue that Shelarose herself signed many of the checks in question, and it is unclear who performed many of the other transactions. Moreover, they contend that the State did not prove that any transfers to Ivan and Deborah were not merely gifts from Shelarose.

---

[3] We also note that the jury received an instruction on accomplice liability. Therefore, the fact that only Ivan had power of attorney is of no consequence. A person may be an accomplice in the commission of a crime by soliciting, commanding, encouraging, or requesting the other person to commit the crime, or by aiding or agreeing the other person in planning or committing the crime, if the person knows that their actions will facilitate the commission of a crime. RCW 9A.08.020(3). Here, even if the jury did not believe that Deborah herself exerted unauthorized control over Shelarose's finances, the State's evidence still showed that Deborah aided Ivan in taking money from Shelarose by holding herself out as having power of attorney along with Ivan and by depositing checks into her and Ivan's joint account.

But, the State admitted into evidence Ivan's signed confession of civil judgment. This confession of judgment acknowledged that Ivan acted as attorney-in-fact for Shelarose and breached the fiduciary duties he owed to her. He admitted that he unjustly benefitted by distributing money from Shelarose's assets to himself, in an amount at least equal to $160,000.[4]

The State also produced evidence of Shelarose's previous manner of gift-giving to her relatives. The power of attorney document gave Ivan the authority to give gifts only in amounts consistent with Shelarose's previous manner of giving. Ralph, Keith, and Daryl testified that Shelarose did give them gifts in the past, but only in small amounts and on special occasions. Yet, Shelarose's and Ivan and Deborah's bank records show "gifts" and "loans" to Ivan and Deborah in amounts much larger than that.[5] Thus, under the power of attorney document, Ivan was not authorized to give these kinds of gifts and loans.

---

[4] Ivan, in a statement of additional grounds, contends that the court erred in admitting the confession of judgment against him, because he signed it under duress. Deborah also contends that the trial court erred in admitting this document.

Ivan moved to exclude the confession of civil judgment before trial. But, the trial court denied this motion, because the confession of judgment is relevant to the issues in this case and it is an admission of a party opponent. The court also instructed the jury that the standard of proof in a civil guardianship proceeding is preponderance of the evidence.

The court did not err in admitting this document. Ivan was given the opportunity to discuss the confession of judgment with a lawyer before signing it. Ivan acknowledged this fact in the confession of judgment itself. He was not forced to admit that he breached his fiduciary duty to Shelarose. And, this document was highly relevant in the criminal case against both Ivan and Deborah.

[5] The notes on many of the checks paid to Ivan and Deborah from Shelarose's accounts involve loans or work. Other checks or transfers were not labeled. These money transfers range in amounts, with several loans of $3,000 or $5,000, an unlabeled check of $7,500, and a cashier's check made out to Deborah in the amount of $13,500.

Ivan and Deborah's secretive behavior provided additional evidence that these takings were unauthorized. They failed to keep records of their involvement in Shelarose's finances. Ivan and Deborah took steps to isolate Shelarose from her other sons by keeping her from attending family parties, changing the locks on her home to prevent the other sons from entering, refusing to let Daryl, Ralph, or Kerie talk to Shelarose when they called, and withholding information about her hospital visits. And, Ralph and Daryl witnessed Deborah covering up the checks she was writing for Shelarose.

We hold that there was sufficient evidence to support both Ivan's and Deborah's convictions.

## II.    Right to Silence

Deborah and Ivan argue that the State violated their constitutional right to silence by urging the jury to find them guilty based on their exercise of this right. They argue that they exercised their right to remain silent by failing to provide an accounting to PSG. And, Ivan contends that the trial court erred in denying his motion for a mistrial on this basis.

Both the United States and the Washington Constitutions protect the criminal defendant's right to be free from self-incrimination, which includes the right to silence. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. We interpret these provisions similarly, and liberally construe the right against self-incrimination. State v. Easter, 130 Wn.2d 228, 235-36, 922 P.2d 1285 (1996).

At trial, the defendant's right against self-incrimination includes the right not to testify. Id. at 236. And, the State is prohibited from eliciting comments from witnesses or making closing arguments related to a defendant's silence such that would encourage the jury to infer guilt from that silence. Id. Nor may the State use evidence of the defendant's prearrest silence as substantive evidence of guilt. State v. Burke, 163 Wn.2d 204, 215, 181 P.3d 1 (2008).

Here, Deborah and Ivan moved pretrial to exclude evidence of their failure to provide an accounting. They argued that a guardian is deemed to be an officer of the court, and, therefore, the fifth Amendment did attach in the guardianship proceedings. Seattle-First Nat'l Bank v. Brommers, 89 Wn.2d 190, 200, 570 P.2d 1035 (1977). They assert that responding to the court orders with answers or documents could have incriminated them. Consequently, they argue they were entitled to invoke the Fifth Amendment right to remain silent. Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973) (the Fifth Amendment applies in any proceeding where the answers could be used against the person in a later criminal prosecution). The State asserted pretrial, and the trial court agreed, that the Fifth Amendment protections did not attach in these proceedings, because the guardian was acting as a private individual, not a state actor. The trial court denied the motion. It ruled that the Fifth Amendment had not attached at the time, because the investigation was conducted in the context of a civil proceeding, and the defendants did not show that the guardian was a state actor.

At trial, the State presented evidence that Ivan and Deborah failed to provide financial documents to PSG, even after multiple court orders. In closing argument, the State emphasized that Ivan and Deborah refused to provide any records or give an accounting. The State further said that Ivan and Deborah were given multiple opportunities to provide an accounting and explain that Shelarose had gifted or loaned them money, yet they did not ever provide an accounting. Both Ivan and Deborah objected to this line of argument as burden-shifting and commenting on their silence, and they moved for a mistrial. The trial court denied their motion.

We need not decide if the Fifth Amendment applies. Assuming it did apply, Ivan and Deborah did not expressly invoke their right to remain silent. Instead, they simply did not respond to the court orders. The State argues that Ivan and Deborah's failure to explicitly invoke the right means that they waived it. In response, Ivan and Deborah contend that they invoked the right by remaining silent.

A person who seeks the protection of the Fifth Amendment right to remain silent must claim it at the time he or she relies on it. Salinas v. Texas, ___ U.S. ___, 133 S. Ct. 2174, 2179, 186 L. Ed. 2d 376 (2013). One does not expressly invoke the Fifth Amendment by standing mute. Id. at 2181. The United States Supreme Court has recognized two limited exceptions: when a defendant decides not to testify at trial, and when governmental coercion makes waiving the right involuntary. Id. at 2179-80. And, where assertion of the right would itself

11

incriminate the person, silence is sufficient. Id. at 2180. These exceptions all recognize that a witness need not expressly invoke the right "where some form of official compulsion denies him 'a free choice to admit, to deny, or to refuse to answer.'" Id. (internal quotation marks omitted) (quoting Garner v. United States, 424 U.S. 648, 656-57, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976))

Deborah and Ivan argue that responding to the request for an accounting by invoking the Fifth Amendment would have incriminated them. But, only answers that "would furnish a link in the chain of evidence needed to prosecute" the person for a crime are incriminating. Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). Here, invoking the right to remain silent would not have provided substantive evidence of the crime. Ivan and Deborah were not subject to official compulsion that denied them the free choice to invoke the right to remain silent.

We conclude that Deborah and Ivan failed to invoke their right to remain silent in the guardianship proceedings. Because they did not invoke this right, the trial court did not err in admitting evidence pertaining to Ivan and Deborah's failure to provide an accounting. Nor did the State err in referring to this failure in closing argument. Therefore, the trial court did not err in denying Ivan and Deborah's motion for a mistrial.

III. Exceptional Sentence

Deborah argues that the trial court erroneously imposed an exceptional sentence based on a major economic offense aggravating factor. She asserts this

is so, because she was convicted as an accomplice, but the jury did not find that she knew the offense was a major economic offense. Ivan also argues that the trial court erred in imposing his exceptional sentence based on the major economic offense aggravating factor.

RCW 9.94A.535(3) permits the trial court to impose an exceptional sentence based on aggravating circumstances considered by the jury. One of these aggravating factors is if the current offense was a major economic offense or series of offenses. RCW 9.94A.535(3)(d). A major economic offense is one which involved multiple victims or multiple incidents per victim, attempted or actual monetary loss substantially greater than is typical for the offense, a high degree of sophistication or planning or a lengthy amount of time, or was facilitated by the defendant's position of trust, confidence, or fiduciary responsibility. Id.

Appellants argue that State v. Hayes, 182 Wn.2d 556, 342 P.3d 1144 (2015) requires reversal of their exceptional sentences. In Hayes, the defendant was convicted as an accomplice, and he appealed his exceptional sentence based on the major economic offense aggravating factor. Id. at 562-63. On appeal, the court noted that it looks to whether the defendant's own misconduct satisfies the language of the statute in reviewing a sentence aggravator. Id. at 563. The court held that when the aggravating factor relates to "the current offense" and the defendant is an accomplice, the jury must find that the defendant had knowledge that informs the aggravating factor. Id. at 566. For example, whether the defendant knew that the offense would have multiple victims, involve a high degree

of sophistication, or take place over a long period of time. Id. Because the court could not tell from the jury's special verdict whether it found that Hayes had any knowledge informing the major economic offense factor, it vacated his exceptional sentence and remanded for resentencing. Id. at 566-67.

Here, Deborah's actions showed that the crime was facilitated by her own position of trust, confidence, or fiduciary responsibility. The power of attorney document named her as the alternate attorney-in-fact, and she held herself out as sharing the power of attorney with Ivan.[6] She wrote checks for Shelarose to sign. She received significant amounts of money from Shelarose during the time Ivan was attorney-in-fact. She isolated Shelarose by screening her family members' calls, preventing her from attending family functions, and changing the locks on Shelarose's home. And, she failed to respond to multiple court orders requesting an accounting of Shelarose's funds during this time period. Therefore, the evidence clearly allowed the jury to find that Deborah's own actions satisfied the major economic offense aggravator whether she was a principal or an accomplice.

Moreover, the trial court also imposed Deborah and Ivan's exceptional sentences based on another aggravating factor: that the defendants knew that the victim was particularly vulnerable or incapable of resistance. Neither Deborah nor Ivan argues that the particularly vulnerable victim factor was an invalid basis for an exceptional sentence. And, the court noted in the findings of fact associated with each exceptional sentence, "Each one of these aggravating circumstances is a

---

[6] Nothing in the record suggests that Deborah actually served as attorney-in-fact under the power of attorney.

substantial and compelling reason, standing alone, that is sufficient justification for the length of the exceptional sentence imposed." It is appropriate for this court to affirm an exceptional sentence where the trial court expressly states that the same exceptional sentence would be imposed based on any of the aggravating factors standing alone. State v. Weller, 185 Wn. App. 913, 930, 344 P.3d 695, review denied, 183 Wn.2d 1010, 352 P.3d 188 (2015).

But, Deborah asserts that the trial court's statement was a "boilerplate finding" that is insufficient to support the exceptional sentence. We do not agree. This finding was supported by the trial court's comments during the sentencing hearing emphasizing, "[W]hat was proved beyond a reasonable doubt was the taking advantage of an infirm person, who is infirm by their age and their dementia. And why? For money. For greed. That crime is repugnant." Taken together, the trial court's statements and written findings indicate that the same exceptional sentence would be imposed based on either of the aggravating factors.

Thus, these exceptional sentences stand regardless of whether the major economic offense aggravating factor was proper. We affirm both appellants' exceptional sentences.

IV.     Joint and Several Restitution

Deborah further argues that the trial court was not authorized to impose joint and several restitution on Deborah and Ivan. Ivan adopts this argument.

This court reviews a trial court's order of restitution for an abuse of discretion. State v. Grantham, 174 Wn. App. 399, 403, 299 P.3d 21 (2013). The

trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Cawyer, 182 Wn. App. 610, 616, 330 P.3d 219 (2014). We review de novo whether the trial court applied the wrong legal standard or based its decision on an erroneous view of the law. Id.

The trial court's authority to impose restitution is derived from statute. State v. Gonzalez, 168 Wn.2d 256, 261, 226 P.3d 131 (2010). The governing statute here, RCW 9.94A.753(3), provides, "[R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury."

The broad language of the restitution statutes indicates legislative intent to give the courts broad powers of restitution. State v. Davison, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991). As such, this court does not give restitution statutes an overly technical construction that would permit a defendant to avoid just punishment. Id. at 922.

Restitution may be ordered only for losses incurred as a result of the crimes charged. State v. Raleigh, 50 Wn. App. 248, 252, 748 P.2d 267 (1988). The trial court need find only that a victim's injuries were causally connected to a defendant's crime before ordering a defendant to pay restitution for the resulting expenses. State v. Enstone, 137 Wn.2d 675, 682, 974 P.2d 828 (1999).

Both Ivan and Deborah contend that the other is the more culpable party, and therefore joint and several restitution is not commensurate with their individual

conduct. But, the evidence shows that Ivan and Deborah acted together to deprive Shelarose of her property by writing checks on Shelarose's accounts and depositing the money into their joint bank account. Clearly, the victim's injury was causally connected to each of them. The court had authority to impose the full amount of restitution on each of them individually. Because they acted in concert to perpetrate the theft, a joint and several restitution order is appropriate to the husband and wife team. They fail to articulate any way in which this order imposes a burden on them in excess of what the statute allows. RCW 9.94A.753(3) gives trial courts broad powers to impose restitution. Davison, 116 Wn.2d at 920. We do not interpret it as prohibiting joint and several restitution.

We hold that the trial court did not err in imposing joint and several restitution here.

V.  Joint Trial

In a statement of additional grounds, Deborah contends that she was prejudiced by the State's decision to try her and Ivan together. CrR 4.3(b) provides that two or more defendants may be joined in the same charging document when each is charged with the same offense or with offenses so closely related that it would be difficult to separate proof of one offense from proof of others.

Deborah appears to raise this issue on the first time on appeal. Accordingly, she must demonstrate that the joint trial was so manifestly prejudicial that it outweighed the concern for judicial economy. State v. Embry, 171 Wn. App. 714, 731, 287 P.3d 648 (2012).

Deborah contends that because she did not have power of attorney for Shelarose, she was prejudiced by being tried with Ivan. But, the State's evidence showed that Deborah assisted Ivan with the theft—her involvement was not limited to depositing funds into their joint accounts. The evidence showed that Deborah and Ivan worked together to deprive Shelarose of her property. Therefore, Deborah has not established the necessary threshold of prejudice.

We affirm.

_Appelwick, J._

WE CONCUR:

_Verellen, J._

_Spearman, J._