IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80501-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENEVIEVE GABRIELA K. KORVIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — RCW 9.94A.753(1) requires that a trial court enter restitution within 180 days of sentencing. But a defendant waives the statutory time limit by engaging in conduct that is inconsistent with the defendant's later assertion of the defense or by being dilatory in asserting the defense. Because Genevieve Korvin's conduct was inconsistent with asserting the statute of limitations defense and consistent with agreeing to the continuances beyond the 180-day deadline based upon working with court administration to accommodate the parties, witnesses, and the court, she waived her right to the defense.

A trial court's finding of an amount of restitution will be upheld if substantial evidence supports its finding. The testimony of current and former employees of the victimized organization and the testimony and written report of a certified

public accountant (CPA) provides a reasonable basis for the restitution amount the trial court ordered.

The trial court did not abuse its discretion. We affirm.

FACTS

The Mount Vernon Chamber of Commerce (Chamber) and the Mount Vernon Chamber of Commerce Foundation (Foundation) form a single nonprofit organization. In 2013, Korvin started working at the Foundation.

The following year, Korvin was hired as the vice president of operations for the Chamber and continued doing work for the Foundation. As the vice president of operations, Korvin was responsible for bookkeeping and inputting the information into QuickBooks and for preparing checks, invoices, newsletters, and events. Korvin was not allowed to issue payroll advances, she was not permitted to use the company credit card for personal expenses, and she was not entitled to mileage reimbursements.

In November 2014, the Skagit State Bank contacted the Chamber's president and chief executive officer regarding suspicious activity on the Chamber's credit card. When the president confronted Korvin regarding the suspicious activity, she denied using the Chamber credit card. Korvin was put on leave during the investigation and was later terminated.

Because of the losses and expenses associated with Korvin's misconduct, the Chamber had to take out a loan just "to continue operating."[1] The Chamber

---

[1] Report of Proceedings (RP) (May 7, 2019) at 128.

also hired CPA Patricia Anderson to review the Chamber's and Foundation's financial records. Anderson discovered inconsistencies between the organizations' written checks and the information in QuickBooks. She also found unauthorized credit card transactions.

Korvin pleaded guilty to first degree theft and was sentenced on March 21, 2018. The parties agreed to set over the restitution hearing to that May. The statutory 180-day deadline for the trial court to determine the amount of restitution was September 17, 2018. Before that deadline, the trial court granted several continuances. And the trial court granted one additional continuance before the restitution hearing began in December 2018.

At the restitution hearing, Korvin and four other witnesses testified for the defense. The hearing was continued three times to accommodate the court's schedule and the length of the examination of the witnesses. On August 21, 2019, the trial court entered $68,870.51 in restitution for the Chamber and the Foundation. Korvin filed a motion to vacate the restitution order. The trial court denied Korvin's motion.

Korvin appeals.

ANALYSIS

Korvin contends that the restitution order is void because the court did not find good cause to continue the restitution hearing beyond the 180-day statutory period and she did not expressly waive the statute of limitations defense.

3

"We review a restitution order for abuse of discretion."[2] "A trial court abuses its discretion if the restitution order is not authorized by statute."[3] "When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days . . . [t]he court may continue the hearing beyond the one hundred eighty days for good cause."[4]

But the 180-day statutory period "is not grounded in a constitutional right or a limit upon the trial court's jurisdiction."[5] "The statutory time limit operates 'as an ordinary statute of limitations' and 'is subject to principles of waiver and estoppel, including the doctrine of equitable tolling.'"[6] "A party waives a statute of limitations defense 'by engaging in conduct that is inconsistent with that party's later assertion of the defense' or 'by being dilatory in asserting the defense.'"[7]

In State v. Kerow, the defendant was sentenced on May 16, 2014, and the 180-day statutory deadline for the court to enter restitution was November 12, 2014.[8] The first restitution hearing occurred within the statutory period.[9] But the court continued the restitution hearing twice without entering a finding of good

---

[2] 192 Wn. App. 843, 846, 368 P.3d 260 (2016).

[3] Id.

[4] RCW 9.94A.753(1).

[5] Kerow, 192 Wn. App. at 847.

[6] Id. at 847-48 (quoting State v. Duvall, 86 Wn. App. 871, 874-75, 940 P.2d 671 (1997)).

[7] Id. at 848 (internal quotation marks omitted) (quoting State v. Grantham, 174 Wn. App. 399, 404, 299 P.3d 21 (2013)).

[8] Id. at 845-46.

[9] Id. at 845.

cause.[10]  And both continuances were outside the 180-days.[11]  This court held that

the trial court had the authority to continue the hearing beyond the 180-day

statutory period.[12]  This court reasoned that the defendant waived the statute of

limitations defense because defense counsel did not insist that the hearing occur

within the statutory period, and the "only reasonable inference from the record"

was that the defendant agreed to the continuances.[13]

Similar to the defendant in Kerow, the trial court continued Korvin's

restitution hearing multiple times beyond the 180-day period without entering a

finding of good cause.[14]  Like the defendant in Kerow, Korvin's counsel could have

insisted that the hearing occur within the statutory period, but Korvin's counsel did

not.  And, consistent with this court's holding in Kerow, the only reasonable

inference from the record is that Korvin agreed to the continuances.

Specifically, Korvin was sentenced on March 21, 2018.  The 180-day

statutory period for the trial court to enter restitution would have expired on

September 17 if the parties had not agreed to continuances of the restitution

hearing.  The parties first agreed to continue the hearing to May 9 and later to July

11.  On July 10, Korvin's counsel requested a continuance of at least 30 days.

---

[10] Id. at 845-46.

[11] Id.

[12] Id. at 848-49.

[13] Id.

[14] The trial court entered an express finding of good cause only in continuing the restitution hearing to August 21, 2018, a date within the statutory 180-day period.

The State objected to the continuance and was ready to proceed, but the court granted Korvin's request and continued the hearing to August 21. The trial court entered orders continuing the hearing to August 31, then to September 14, then to October 23, and finally to December 5. To accommodate all of the witnesses, the hearing continued over four days December 5, 2018, January 30, 2019, May 7, 2019, and June 13, 2019. The court issued a written ruling on July 9, 2019, and entered the restitution order on August 21, 2019.

At some point during the continuances, Korvin filed two separate witness lists. And throughout the month of January, Korvin subpoenaed 11 witnesses. During the hearing, Korvin and four other witnesses testified for the defense.

Korvin challenges the court's failure to enter a finding of good cause to continue the hearing beyond the 180-day period and the related finding that Korvin waived the statute of limitations defense. But the prosecutor who took over this matter in August 2018 provided his declaration that from August through the conclusion of the restitution hearing and entry of the restitution order "our court dates were set based upon an agreement of the parties. Both the State and the defense continued to work with court administration and witnesses in order to set the dates for the hearing as well as for entry of the restitution order."[15] In denying Korvin's motion to vacate the restitution order, the trial court found that "[t]hroughout the time from entry of the Judgment and Sentence until the Order of Restitution was entered, the State and the Defendant were working with Court

---

[15] Clerk's Papers at 198.

Administration to set hearing dates in order to accommodate the parties, witnesses, and the Court."[16] The trial court also found that Korvin did not object "to a violation of the 180-day time limit until September 20, 2019," over a year after the statutory period expired.[17] Because the only reasonable inference from the record is that Korvin agreed to the continuances, the court did not abuse its discretion in failing to enter a finding of good cause or in finding that Korvin waived the statutory defense.

Next, Korvin argues substantial evidence does not support the restitution amount ordered for the checks, the credit card charges, and the interest on the loan taken out by the Chamber to cover Korvin's theft.

A trial court's finding of an amount of restitution should only be reversed if there is not substantial evidence to support its finding.[18] "'Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding.'"[19] "[R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury."[20] "Restitution is appropriate only if a causal connection exists between the

---

[16] Id. at 236 (Finding of Fact 20).

[17] Id. (Finding of Fact 19).

[18] State v. Thomas, 138 Wn. App. 78, 83, 155 P.3d 998 (2007).

[19] State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2019) (quoting State v. Klein, 156 Wn.2d 102, 115, 124 P.3d 644 (2005)), review denied, 193 Wn.2d 1005, 438 P.3d 122 (2019).

[20] RCW 9.94A.753(3).

defendant's offense and the victim's injuries for which restitution is sought."[21]  "A causal connection exists if 'but for' the offense, the loss or damages to a victim's property would not have occurred."[22]  "'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'"[23]

First, Korvin challenges the $32,767.54 ordered for unauthorized disbursements from the Chamber's and Foundation's checking accounts, including payroll advances and mileage reimbursements.  Kristen Keltz, former president and chief executive officer of the Chamber, and Bob Lama, the chair of the board of directors for the Chamber and the Foundation, testified that Korvin was not entitled to mileage reimbursements.  Lama also testified that he did not authorize Korvin to submit payroll advances and did not recall signing them.  And the checks Korvin prepared establish that she wrote herself checks totaling approximately $32,767.54.

CPA Anderson testified about discrepancies between bank statements and supporting checks for the Chamber and the Foundation.  Anderson testified some of the checks were made payable to Korvin with a QuickBooks entry showing that

---

[21] State v. Cawyer, 182 Wn. App. 610, 616-17, 330 P.3d 219 (2014) (citing State v. Vinyard, 50 Wn App. 888, 893, 751 P.2d 339 (1988)).

[22] Id. at 617 (citing State v. Tobin, 161 Wn.2d 517, 519, 524-25, 166 P.3d 1167 (2007)).

[23] State v. Deskins, 180 Wn.2d 68, 82-83, 322 P.3d 780 (2014) (internal quotation marks omitted) (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005)).

the payment was made to someone else, some checks had no QuickBooks entry, and some checks were issued with the payee's name replaced with Korvin's. Anderson also testified that the checks containing the discrepancies were cashed by Korvin personally. The CPA report estimated that Korvin took $32,767.54 from the Chamber in unauthorized payroll advances, reimbursement expenses, and other transactions. The report estimated she took $12,550 from the Foundation in unauthorized payroll advances.[24] Accordingly, substantial evidence supports the trial court's order of $32,767.54 to the Chamber and $11,144.07 to the Foundation.[25]

Second, Korvin disputes the amount of restitution the trial court ordered for unauthorized credit card transactions. Andy Mayer, the Chamber's president and chief executive officer, testified that he was contacted by the bank about suspicious credit card activity on the Chamber's credit card. He testified that the credit card used in the suspicious transactions had Korvin's name on it and, after reviewing the charges, he did not believe they were work related. The majority of

---

[24] Ex. 15. Korvin argues that the trial court's restitution amount for the checks is not supported by substantial evidence because CPA Anderson did not conduct a "full audit" of the Chamber's and Foundation's files. Appellant's Br. at 18. But CPA Anderson's testimony, coupled with the testimony from the former president of the Chamber and the chair of the board of directors, supports Anderson's determination that there were unauthorized payments from the Chamber's and Foundation's checking accounts made to Korvin. As a result, sufficient evidence provides a reasonable basis for estimating the unauthorized disbursements from the Chamber's and Foundation's checking accounts.

[25] The State requested $18,144.07 in restitution on behalf of the Foundation. But the trial court found Korvin credible that she was entitled to $1,400 per month while she continued working for the Foundation. Thus, the trial court awarded the Foundation $11,144.07 in restitution.

the transactions on the Chamber's credit card were casino charges. Mayer also testified Korvin, when confronted about the charges, initially denied using the company card and then blamed her sister for taking and using it. The Chamber's credit card transaction history establishes that Korvin spent upwards of $15,000 at casinos over a two-month span. Some of the other transactions on the Chamber's credit card were charges to Macy's, Walmart, a tobacco store, and a spa. The CPA report estimated $15,414.10 in unauthorized credit card charges. Substantial evidence supports the trial court's restitution order of $15,414.10 to the Chamber.

Finally, Korvin challenges the amount of restitution the trial court ordered for the interest accrued on the Chamber's loan. When asked about the loan, Mayer testified that because of the losses including legal and accounting expenses associated with Korvin's misconduct, the Chamber had to take out a loan "just to continue operating."[26] Mayer testified that the interest payments on the loan were approximately $6,545.80. Substantial evidence supports the trial court's order of $6,544.80 for interest on the loan.

Korvin argues that the casino charges on the Chamber's credit card are the only amounts supported by substantial evidence. But as discussed, the testimony of current and former employees of the organization, the testimony and written report of the CPA, and the organization's transaction history support the restitution amount the trial court ordered. Because a reasonable person could conclude from the evidence that the restitution amount of $68,870.51 was causally connected to

---

[26] RP (May 7, 2019) at 128.

10

Korvin's theft and the injuries suffered, substantial evidence supports the restitution amount.  The trial court did not abuse its discretion.

Therefore, we affirm.

WE CONCUR: